# EXHIBIT 3

| | | TITLE | NO. |
|---|---|---|---|
| ![NY State Corrections and Community Supervision] | **DIRECTIVE** | **Substance Abuse Testing by Community Supervision Staff** | 9432 |
| | | | DATE |
| | | | 06/04/2019 |
| SUPERSEDES | DISTRIBUTION | PAGES | DATE LAST REVISED |
| Dir. #9432 Dtd. 09/14/2017 | A B | PAGE 1 OF 13 | |
| REFERENCES (Include but are not limited to) NYS Executive Law; NYS Correction Law; MHL Article 10; ACA Expected Practice 4-APPFS-2D-04; Directives. #2944, #2945, | | APPROVING AUTHORITY *(signature)* | |

I.  **PURPOSE**: The Department of Corrections and Community Supervision (DOCCS) employs a substance abuse testing program as a supervision tool for staff and as a deterrent to illicit drug use and alcohol abuse by parolees. DOCCS provides staff with resources for performing initial on-site screening tests and confirmatory tests through independent laboratory analysis. Standardized testing protocols are used to identify parolees with drug and alcohol problems, to refer parolees to treatment providers, and to respond to violations of the conditions of release.

   NOTE: References to "parolee" and "releasee" are intended to refer to individuals released to Community Supervision and are presently under the jurisdiction of DOCCS. References to "parolee", for purposes of this directive, shall also include any MHL Article 10 identified respondents who are presently under the jurisdiction of DOCCS.

II. **POLICY**: The Department's substance abuse testing policy provides for on-site drug and alcohol testing by Parole Officers and confirmation testing by an independent toxicology laboratory. On-site substance abuse tests and laboratory confirmation services are utilized to ensure effective community supervision through therapeutic intervention or delinquency action as initiated by the Parole Officer (PO) and Senior Parole Officer (SPO).

   The on-site testing method provides POs with the resources to test for a wide range of substances and the ability to receive immediate test results. POs are required to conduct on-site tests at Community Supervision office locations and while in the field. The on-site testing method allows staff to immediately respond to indications of drug use and alcohol use by completing referrals to treatment programs and by providing staff with the ability to immediately modify the supervision plan in response to the presenting behavior and the needs of the parolee. POs are required to perform tests for the use of illicit substances and alcohol in order to monitor compliance with the terms and conditions of release and, where appropriate, to initiate a violation of release. Confirmation tests are performed by an independent toxicology laboratory in response to a parolee's failure to admit use and confirmation tests are also performed in response to disputes related to the on-site test results. Confirmation tests and laboratory toxicology tests are also performed to determine usage levels in response to the limitations of an on-site testing device.

   High risk parolees under high intensity supervision, those with a history of substance abuse and positive tests results, and those parolees at risk for relapse are required to be tested on a routine basis. DOCCS policy requires that a parolee must be routinely tested when the Board of Parole has imposed a mandatory substance abuse screening condition of release. The Department also performs routine testing when the assigned PO and SPO impose a substance abuse testing condition as part of the case-specific supervision plan.

A PO may also conduct a test when there is an articulable reason to believe the parolee is under the influence of drugs or alcohol, or reliable and credible information that the parolee may be under the influence exists.

The Parole Officer has the authority and an obligation to respond to the use and possession of illicit substances as required under New York State law and in accordance with DOCCS policy and procedures. POs are required to assess the totality of the circumstances and to make a determination regarding potential risk to staff safety and to the safety of the public. DOCCS testing procedures and protocols are designed and intended to promote and enhance public safety.

This operating procedure applies to all personnel, units, and offices supervised and operated by Community Supervision. All testing practices and procedures shall comply with applicable State and Federal laws and regulations, DOCCS policies and directives, ACA standards, and PREA standards.

### III. DEFINITIONS

A. <u>Articulable Reason</u>: A decision to test a parolee for drugs or alcohol may be derived from the observations of a PO or other staff member concerning physical and/or emotional characteristics of the parolee (or respondent) which, based on the PO's experience, knowledge and training, are indicative of potential substance abuse. An articulable reason may also be derived based upon the parolee's criminal, parole and/or probation record, and social history.

B. <u>Reliable Source</u>: A reliable source is someone who has credible information regarding the parolee or information about an incident involving the parolee, such as that received from a victim of or a witness to an incident. Law Enforcement Officers investigating the parolee or incident, or individual(s) having firsthand knowledge of the parolee or incident, are also considered reliable sources. Information received from an informant, family member, or friend may be considered a reliable source.

C. <u>Reasonable Suspicion</u>: A belief that a parolee is using or has used prohibited drugs or alcohol, based on specific objective and articulated facts, and reasonable inferences, which may include the following:

  1. Observable information such as direct observation of the use of a substance, physical symptoms, and behavior that appears to be consistent with being under the influence of a prohibited drug or alcohol;
  2. Abnormal conduct or erratic behavior;
  3. Report of prohibited drug or alcohol use by a reliable and credible source;
  4. Evidence that a parolee has tampered with a specimen sample or test; or
  5. Evidence that a parolee is involved in the use, possession, sale, solicitation, or movement of prohibited substances or illicit drugs.

D. <u>Confirmation Test</u>: A test used to verify positive results from an initial on-site screening test. The confirmation test shall be performed using the Gas Chromatography/Mass Spectrometry methodology to provide for a greater margin of accuracy.

E. <u>Gas Chromatography/Mass Spectrometry (GC/MS)</u>: This testing methodology is used to detect and confirm the presence of a substance or substances within a test sample or specimen based on characteristic fragmentation patterns at specific retention times, utilizing a gas chromatograph coupled to a mass spectrometer. The GC/MS testing methodology is considered the "gold standard" for forensic substance identification.

F. Chain of Custody Specimen Collection: Chain of custody shall be defined as the control of the movement and location of a collected specimen from the time it is obtained until the time it is tested on-site or submitted to a laboratory for confirmation testing. With regard to laboratory confirmation testing, the collection and handling of the specimen must be properly performed and documented from the time the specimen is obtained from the parolee to the presentation of the results as evidence in revocation proceedings. Strict adherence to the chain of custody procedures including the identification, collection, labeling, and shipment of specimens ensures that the integrity of the collection process is preserved.

**IV. TESTING PROCEDURES, CONFIRMATION, AND DOCUMENTATION**

A. Reasons and Rationale for Testing Parolees

1. As a condition of parole, conditional release, post-release supervision, local conditional release, or strict and intensive supervision and treatment (SIST).
2. A special condition of release imposed by the Board of Parole, a Regional Director, Assistant Regional Director, Bureau Chief, SPO, or PO.
3. In response to a testing requirement stipulated in an order of SIST.
4. A requirement associated with referral and participation in a community-based substance abuse or alcohol treatment program.
5. A stipulation of a revocation of release or restoration to supervision decision.
6. Documented parolee history of drug and alcohol abuse.
7. Physical signs or behaviors exhibited by a parolee indicating possible usage of illicit drugs or controlled substances.
8. Direct observation of the use of illicit drugs, prohibited substances, or prohibited alcohol use by a parolee.
9. Evidence that a parolee is involved in the possession and use of prohibited substances or illicit drugs.
10. Report of prohibited drug and alcohol use by a parolee from a reliable and credible source.
11. Parolee admission or confession.
12. Routine and random testing performed as a deterrent and to identify and provide treatment to parolees involved in substance abuse or alcohol abuse.

B. Assessments (COMPAS, Case Plan, Re-Entry COMPAS, and Supervision Plan)

1. Each individual received at a DOCCS facility or beginning a period of community supervision will have an assessment completed for substance abuse risks and needs.
2. The reception COMPAS assessment shall guide the development of the individualized Re-Entry COMPAS and the Case Plan.
3. Where appropriate, inmates shall undergo clinical assessments by Offender Rehabilitation Coordinators (ORC), Supervising Offender Rehabilitation Coordinators (SORC), or other designated staff for purposes of facility-based treatment and in preparation for release to the community. The clinical assessments shall guide the development of the parolee's substance abuse treatment plan.

4. The Re-Entry COMPAS, Case Plan, and Supervision Plan shall incorporate referral information, relapse prevention education, and treatment resources.

5. When indicated by the individualized assessment, inmates shall undergo evaluation by a multidisciplinary clinical team made up of medical, mental health, and substance abuse professionals.

6. The inmate or parolee shall be involved in the development of the individualized substance abuse treatment plan.

7. The frequency of alcohol and substance abuse testing shall be based on the completed assessment of substance abuse risk and needs as well as any applicable reasons and rationales referenced in Section IV-A-1 through 12.

C. <u>Testing Frequency (Minimum Standards)</u>

1. If the COMPAS identified substance abuse need is "high;" the parolee is to be tested on a bi-monthly basis.

2. If the COMPAS identified substance abuse need is "medium;" the parolee is to be tested on a quarterly basis.

3. If the COMPAS identified substance abuse need is "low;" the parolee is to be tested on a semi-annual basis.

NOTE: The PO has discretion to increase the frequency of the testing consistent with any of the applicable reasons and rationales referenced in Section IV-A-1 through 12.

D. <u>Types and Methods of Testing</u>

1. On-site urinalysis testing kits and devices.

2. On-site oral fluid (saliva) testing kits and devices.

3. Alcohol breathalyzer.

4. Confirmation testing by a forensic toxicology laboratory.

5. Testing conducted by residential and outpatient treatment providers.

E. <u>On-Site Testing (Initial Screening) Procedures</u>: Specimens shall be collected from parolees in a manner consistent with DOCCS policy, the contractor's specifications, and in consideration of the health and safety of DOCCS staff. Chain of custody procedures shall be followed in an effort to prevent contamination, substitution, and the adulteration of collected specimens. Only positive on-site screens requiring corroboration in accordance with this directive are to be sent to the forensic toxicology laboratory for confirmation. POs, SPOs, Bureau Chiefs, and other designated DOCCS staff shall adhere to the following testing procedures:

1. The Officer will inform the parolee that an on-site test will be conducted.

2. Prior to the collection of any specimen by an Officer or designated staff person, the parolee will be asked if they have used any alcohol, drugs, illegal substances, or any substances prohibited by their supervision conditions.

3. All medications currently reported shall be entered into the parolee's Case Management System (CMS) record. The Officer shall record the name of the medication, drug type, frequency taken, dosage amount, and the last date(s) used.

4. The parolee shall be escorted to the collection and testing areas by an Officer and the Officer shall observe the parolee throughout the process.

5. Officers and staff members responsible for the collection of urine specimens shall be of the same gender as the parolee and the Officer or staff member shall be in position to verify that the specimen passes directly from the parolee into the specimen bottle and/or testing device. Observation must be direct and continuous. If the observation of the specimen is not possible (e.g., specimen collected in the field setting or same gender Officer is not available) the reason or reasons shall be documented in the CMS record of the parolee and either an unobserved urinalysis test or oral fluid test shall be performed at the discretion of the assigned Officer/staff.

6. Officers shall only test one parolee at a time and ensure that no other parolees are present in the collection room and testing areas during the process.

7. If the specimen collection and testing is being performed by a staff member other than the assigned Officer, the staff member shall ensure that they have verified the identity of the parolee.

8. While in the office or report station, the parolee shall be instructed to remove any unnecessary outer clothing, accessories, or personal items that may potentially interfere with the collection of the specimen. The parolee is to be allowed to safeguard personal belongings during collection and testing.

9. If deemed necessary, the Officer shall conduct a frisk search of the parolee to determine if adulterants, contaminants, or other substances or materials are on the parolee's person or hidden in clothing.

10. The collection room and testing areas must be routinely inspected and any potential contaminants must be removed.

11. The parolee must remain in the Officer's or designee's presence throughout the entire collection and testing processes. The parolee shall not have access to any substances, liquids, or materials that may potentially contaminate a specimen.

12. The Bureau Chief, SPO, and PO are collectively responsible for ensuring that specimen collection and testing is performed in accordance with the manufacturer's (contractor's) instructions and staff members are also responsible for conducting quality control inspections of reagents, devices, equipment, and other associated supplies.

13. Parolees shall be instructed to wash their hands after the specimen has been submitted and the specimen is to be kept in the direct view of the Officer or other designated staff member and the parolee at all times throughout the process.

14. On-site testing shall be performed in the presence of the parolee and in accordance with the manufacturer's and/or contractor's device instructions.

15. On-site test kits, devices, and collection supplies shall not be used beyond the expiration date listed on the package or test device.

16. If the on-site test results are positive, the Officer or other designated staff member shall complete Form #CS4169A, "On-site Drug and Alcohol Test Record," which shall serve as the positive result record and on-site testing chain of custody document.

17. If the on-site test results are positive, the parolee shall be instructed to sign the acknowledgement section of Form #CS4169A to document the admission and type of substance(s) used. The parolee's signed admission may serve as corroborating evidence and no confirmation test is required.

If the parolee refuses to sign the form, the Officer shall write "Refused" in the parolee signature section of the form and also sign the form as the witness. Failure to sign the form shall <u>not</u> invalidate the results of any tests performed.

18. A positive test result does not require a confirmation test if the parolee admits or affirms the use of drugs or alcohol by signing the acknowledgement section of [Form #CS4169A](#) or otherwise attests to the use of drugs or alcohol in writing.

19. If the specimen tests positive and the parolee refuses to provide an admission or refuses to confess to the use of the prohibited substances, a confirmation test shall be ordered and performed by the Department's contracted toxicology laboratory. If a violation of release warrant is issued, the test results and certification provided by the contractor will be used as corroborating evidence in the revocation proceedings.

20. [Form #CS4169A](#) shall serve as the source document for purposes of placement in the case folder and the entry of case-specific results in the CMS record of the parolee. The PO or other designated staff shall enter both positive and negative test results in the parolee's CMS record.

21. It is the responsibility of the PO to provide the parolee with the results of the on-site drug and alcohol tests.

22. On-site drug screening test results shall be entered in the CMS record of the parolee by close of business on the next business day following the administration of the test and in no event any later than the end of the business week (close of business on Friday).

23. In the event that a parolee is unable to provide a specimen (urine or saliva) for testing at the collection site, the parolee shall be provided no more than two hours to comply with instruction by providing a specimen suitable for testing. The parolee shall remain under staff observation for this period. If a specimen is not provided within the two hour period, the parolee will be advised that the failure to produce a specimen constitutes a refusal to comply and may result in a recommendation of delinquency. The PO or staff member responsible for collection of the specimen shall notify the SPO of record or the on duty SPO, and a case conference shall be conducted.

24. Incidents of deliberate tampering, intentionally contaminating a specimen or test, or the use of an adulterant shall be immediately reported to the SPO or the Bureau Chief. Such behavior on the part of the parolee shall be documented in the case folder and the CMS record of the parolee. The deliberate and intentional acts to tamper and contaminate the specimen may result in a recommendation of delinquency.

25. If the specimen tests negative, the parolee shall be so advised. The Officer is to encourage the parolee to abstain from the use of drugs and alcohol. [Form #CS4169A](#) shall be completed and signed by both the parolee and the Officer.

26. Urine specimen samples with negative results shall be disposed of by the parolee in a toilet under the direct observation of an Officer or designee. Specimen containers or cups, testing devices, and disposable testing accessories and supplies shall be discarded in approved biohazard receptacles under the supervision of the Officer or staff person performing the test.

F. <u>Confirmation of On-Site (Initial Screening) Test Results and Testing Procedures</u>: Specimens shall be collected from parolees and submitted for testing in a manner consistent with DOCCS policy, contractor and/or vendor specifications, and in consideration of the health and safety of DOCCS staff.

Chain of custody procedures shall be followed in an effort to prevent tampering, contamination, substitution, and the adulteration of collected specimens. Only positive on-site screens requiring corroboration in accordance with this directive are to be sent to the forensic toxicology laboratory (contractor/vendor) for confirmation.

Where it is not possible to perform an initial on-site drug screen due to the type of substance or drug indicated and the only available method of testing for the substance or drug would be through a laboratory analysis of the urine specimen, the Officer shall first obtain the approval of the SPO or Bureau Chief before submitting the sample to the contractor for testing and confirmation. The approval by the SPO or Bureau Chief is to be recorded in the CMS record of the parolee. The CMS case-specific entry shall note the approval of the supervisor and type of substance or drug confirmation sought from the laboratory.

Staff shall use the contractor's proprietary chain of custody form when submitting requests to the laboratory for confirmation testing. Confirmation tests are performed to determine the presence of drugs or drug metabolites in a particular sample.

POs, SPOs, Bureau Chiefs, and other designated DOCCS staff shall adhere to the following procedures:

1. The Officer will inform the parolee that the specimen provided will be submitted to a forensic toxicology laboratory for confirmation testing.
2. If confirmation of an on-site drug test is required, the initial specimen must be used for the confirmation test by the toxicology laboratory (contractor and/or vendor).
3. The Officer or designee shall prepare the specimen according to contractor and/or vendor specifications to include the required chain of custody form (Attachment A) provided by the contractor. Staff shall use the contractor's (laboratory's) proprietary chain of custody form, security tape or seal, shipping bag, and shipping label.
4. The chain of custody form must be accurate and legible and the document must clearly note the parolee's name, NYSID, and test date.
5. The Officer shall ensure that the appropriate confirmation specimen bottle, container, or cup is used in the collection of the sample and for purposes of submission to the laboratory (contractor).
6. The specimen and chain of custody form (Attachment A) shall remain in the full view of the Officer or designee and the parolee at all times and until the specimen is labeled and sealed.
7. The Officer shall instruct the parolee to initial the identification label.
8. The Officer shall ensure that the identification label is affixed and/or secured to the specimen container.
9. The Officer and the parolee shall sign the chain of custody form (Attachment A). A parolee's failure to sign the form shall <u>not</u> invalidate the test results.
10. A copy of the chain of custody form shall be filed in the parolee's case folder.

11. In the presence of the parolee, the Officer or designee shall prepare and secure the specimen for shipping according to the contractor-provided confirmation test instructions and the Officer shall ensure the package is properly secured to prevent tampering or leakage. The contractor-provided chain of custody form must be placed inside the shipping package.

12. The confirmation test shipping package shall be shipped on the day that the specimen is obtained. If the specimen package is not sent to the contractor on the date the specimen was collected, the Officer shall document in the CMS record of the subject the steps taken to ensure the chain of custody and the subsequent shipping of the specimen package. Any delays in shipping the package on the date of the specimen collection shall be immediately reported to the Officer's supervisor.

13. The shipping of the specimen package to the contractor (toxicology laboratory) shall be recorded in the CMS record of the parolee.

14. Upon receipt of the confirmation test results from the contractor (laboratory), the PO or designee shall enter the results in the CMS record of the parolee by close of business on the date of receipt of the results by either the PO or SPO.

15. If the confirmation test results are positive for an illegal, unauthorized, or illicit substance(s), the PO shall initiate a case conference with the SPO to determine the appropriate course of action.

16. If the confirmation test results are negative for an illegal, unauthorized, or illicit substance(s), the PO shall initiate a case conference with the SPO to provide verification of the negative test results.

17. The PO or designee shall notify the parolee of any negative test results during the normal course of business and as soon as practicable.

18. All confirmation testing and laboratory produced documentation received from the contractor such as test results, reports of tampering and/or contamination, and/or notifications regarding rejected specimens shall be immediately reported to the SPO or Bureau Chief for review and appropriate action. Where necessary and based on the current status of the parolee or alleged violator, this information and the documentation must be immediately reported to and provided to the Parole Revocation Specialist.

19. All confirmation testing and laboratory produced documentation received from the laboratory such as test results, reports of tampering and/or contamination, or notifications regarding rejected specimens shall be placed in the parolee's case folder and the information shall be entered in the CMS record of the parolee.

20. If the laboratory (contractor) was not able to test the specimen due to insufficient quantity, dilution, contamination or adulteration, or due to chain of custody issues, the parolee shall be notified and retested in accordance with operating procedures.

G. Breath Alcohol Testing (Breathalyzer)

1. Staff shall only use DOCCS approved and authorized breath alcohol testing equipment and devices.

2. The Bureau Chief will ensure that all officers and designated personnel are properly trained in breath alcohol testing procedures.

   3. Staff must adhere to all testing equipment instructions provided by the manufacturer or manufacturer's representative.
   4. All breath testing equipment must be routinely calibrated and checked for accuracy in accordance with the manufacturer's instructions.
   5. The Bureau Chief or designee shall be responsible for ensuring that all alcohol testing equipment is operating properly.
   6. Parolees shall be tested in accordance with the reasons and rationales as referenced in Section IV-A-1 through 12.

V. **CASE MANGAGEMENT SYSTEM (CMS) REQUIREMENTS**
   A. Community Supervision staff shall document all tests administered (or attempted) in the CMS record of the parolee.
   B. Staff will promptly and accurately record parolee data while ensuring that the information is accurate and complete.
   C. [Form CS4169A](#) shall serve as the source document for entering on-site test information in CMS.
   D. The case-specific CMS entry must include the name of the test (test type), device type used, substance or substances detected and, if applicable, the written admission and/or acknowledgement of drug or alcohol use.
   E. All confirmation tests performed by a forensic laboratory and all associated results received shall be entered in CMS. Staff must document completion of the laboratory chain of custody form and receipt of the test report in the CMS record of the parolee.
   F. Alcohol tests performed using a breathalyzer machine shall also be recorded in CMS.
   G. The Officer obtaining the specimen and performing the on-site test(s) is primarily responsible for documenting the tests performed and the results by entering the information in the CMS record of the parolee.
   H. The CMS record shall document any failure to appear for testing and any refusal to provide a specimen for testing.
   I. If a parolee is unable to provide a specimen, staff must document the circumstances in the CMS record.
   J. Community Supervision staff shall comply with all Department issued directives, instructional memorandums, and desktop (or printed) guides that provide directions for entering parolee information into the CMS.

VI. **ON-SITE SCREENING AND CONFIRMATION TEST REPORTS**
   A. [Form #CS4169A](#) is to be filled out each time a parolee is tested utilizing an on-site device. This is a multi-purpose form designed to function as a testing record for each individual tested, and as an admission record that can be introduced as evidence at a violation hearing. [Form #CS4169A](#) is to be distributed as follows:
      1. Original to the Community Supervision case folder
      2. Copy to the Bureau Chief
   B. Confirmation testing shall be initiated using the contractor and/or vendor provided chain of custody form (Attachment A). The chain of custody form is to be distributed as follows:
      1. Original to toxicology laboratory

    2. Copy for the Community Supervision case folder

  C. The confirmation (laboratory) test results report and the chain of custody form are to be filed in the Community Supervision case folder.

## VII. PROGRAM SUPPORT AND INVENTORY – CS REGIONS AND BUREAUS

A. The Regional Director shall be primarily responsible for staff compliance with regard to the Department's Inventory Control Program as detailed in Directive #2945, "Inventory Control." The Regional Director shall ensure that staff remains in compliance with policy requirements including the scheduling of inventories, frequency, standards, perpetual inventory records, independent physical inventory and inspection, reconciliation of discrepancies, and documentation audit.

B. The Regional Director, Assistant Regional Director, and Bureau Chief shall be responsible for the equipment inventory of breath alcohol testing and/or breathalyzer devices in accordance with Directive #2944, "Equipment Control."

C. Each Bureau shall have one staff person designated by the Regional Director or their designee to serve as the Drug and Alcohol Testing Coordinator. Under the direction of the Regional Director, Assistant Regional Director, and the Bureau Chief, the Coordinator shall be responsible for the administration of the following:

    1. Ordering, receiving, and maintaining drug and alcohol testing supplies.

        a. When supplies are reduced to a 60-day inventory, the Coordinator shall order a three month inventory of supplies on the established order forms.

        b. Ensure supplies are used before their expiration dates to prevent waste with the oldest inventory stored in such a way that it will be used first.

        c. If an order is not received within approximately three weeks of the requisition date, the Coordinator shall contact Support Operations and request tracking of the purchase requisition through the vendor.

        d. The Coordinator shall verify that new supply shipments correspond with the purchase orders and requisitions. If damages or shortages in the shipment are encountered, they shall be recorded on the packing slip and signed by the Coordinator. All packing slips shall be submitted to the Regional Office and Support Operations within five business days after delivery of the shipment. The Coordinator shall keep a copy of the packing records with the corresponding order forms.

        e. Supplies shall be kept in a secured area during non-business hours and any supplies requiring refrigeration shall be refrigerated as directed by the manufacturer.

        f. The Coordinator is responsible for ensuring that all testing devices, equipment, and supplies are received and appropriately maintained.

        g. The Coordinator shall also be responsible for all record keeping related to the storage, distribution, assignment, removal, and transfer of all testing equipment, devices, and supplies.

    2. The drug and alcohol testing Coordinator shall inventory supplies on a monthly basis utilizing the DOCCS approved inventory and recordkeeping documents and forms. The Coordinator shall keep a supply of these forms in the area where drug and alcohol testing devices are stored. The Coordinator shall:

        a. Maintain the completed forms for completion of the monthly inventory.

   b. Inventory all drug and alcohol testing devices monthly and document them on the Community Supervision Internal Operations Monthly Drug and Alcohol Testing Inventory Tracking System.
   c. The monthly inventory report shall be submitted to the Office of Internal Operations via email by the fifth business day following the report month.
  3. Consult and confer with the drug and alcohol testing vendors and/or contractors regarding product requisitions, delivery, and documentation.
  4. Maintain records/statistics reflecting drug and alcohol testing.
   a. The Coordinator shall collect and complete information identified on the Internal Operations Monthly Drug and Alcohol Testing Tracking System and email the records and statistical information to the Office of Internal Operations by the fifth business day following the report month.
   b. All records relating to the monthly inventory shall be filed in the bureaus and placed with a copy of the corresponding monthly report and maintained by the Coordinator.
   c. Copies of drug and alcohol testing supply order forms, supply invoices, and monthly statistics shall be kept for a minimum of three years in each Bureau and Regional Office.
 D. The Regional Director or designee shall advise all affected staff and the Director of Internal Operations within three business days when a drug testing Coordinator assignment has changed.
 E. Bureau Chiefs shall monitor drug and alcohol testing and safety procedures in their respective offices to ensure Officer compliance with policy, provide immediate corrective action, and arrange training sessions to address any new or recurrent issues.
 F. In addition to conducting initial staff training, the Bureau Chiefs or their designees shall conduct periodic unit meetings and training sessions in an effort to advise Officers and bureau personnel of any policy or procedural changes and to address proper protocols for drug and alcohol testing, purchasing, and inventory.

## VIII. STAFF TRAINING

 A. Officers conducting drug and alcohol testing must be trained to collect the specimens and trained to perform the on-site tests using devices, supplies, and equipment provided by a vendor and/or contractor approved by the Department. Officers will also be trained in the requirements of chain of custody, transporting specimens, and documenting the tests performed and the results received.
 B. The Department will provide training for specimen collection and testing in accordance with this operating procedure, manufacturer (vendor) product specifications, and universal safety precautions.
 C. Training shall be conducted by the vendor responsible for providing the testing products or by staff trainers approved by the Director of Training or the Regional Director(s).
 D. Training shall be incorporated into the Parole Officer Recruit Training Program, provided during initial Community Supervision bureau orientation, and via in-service bureau training programs under the direction of the Regional Directors and Bureau Chiefs.
 E. All training participation shall be documented in the Officer and the employee training records.

## IX. STAFF SAFETY

A. All Officers and staff members shall follow workplace safety procedures as follows:

1. Staff shall remain familiar with all Department issued directives, instructional documents, and training materials produced in connection with workplace safety and the potential exposure to bio-hazards and bodily fluids.

2. Officers and other designated staff responsible for the collection of specimens, performing on-site testing, and preparing samples to be submitted for laboratory analysis shall wear latex, vinyl, or other disposable protective gloves.

3. All staff shall remain familiar with standard precautions for the handling of urine specimens and saliva samples. Staff should wear protective gloves for purposes of protection against potential exposure to bio-hazards and bodily fluids.

4. No urine specimen shall be tested by staff if blood is visible or if blood appears to be visible in the specimen. Staff shall use extreme caution when disposing of the urine specimen.

5. Staff should immediately wash their hands or other affected areas with antibacterial soap and warm water if exposed to or contacted by bodily fluids during the collection, testing, or packaging of specimens.

6. Staff shall be provided with secure and appropriately equipped collection rooms and/or lavatories (restrooms) for purposes of procuring specimens, conducting on-site tests, and preparing specimens for submission to the toxicology laboratory.

7. Bureau Chiefs shall ensure that approved cleaning, disinfecting, and decontaminating products are made available to staff and readily accessible. Community Supervision staff shall <u>not</u> purchase any products from unauthorized sources or retail outlets as the potential exists that such products may contain hazardous substances or materials.

# NON-FEDERAL FOUR-PART DRUG TESTING CUSTODY AND CONTROL FORM

1654301820
1609686/1429044

Alere
1111 Newton St., Gretna, LA 70053
450 Southlake Blvd., Richmond, VA 23236
Phone: 800.433.3823 | Fax: 504.361.8298

Airbill / Courier Tracking Number

Specimen ID: 206707509

**STEP 1: TO BE COMPLETED by Collector or Employer/Client Representative**

A. Employer/Client Name, Address, Phone, & Fax:
NYS DOCCS/PEEKSKILL A/O
201 SOUTH JAMES ST.
BASEMENT
PEEKSKILL, NY 10566
914-734-4324  914-734-4423

Facility Number: 414003

B. MRO Name, Address, Phone, & Fax:

C. Name/ID:

D. Donor SSN or Employee ID No.

E. Daytime Phone No.:
F. Evening Phone No.:

G. Reason for Test: ☐ Pre-Employment  ☐ Random  ☐ Reasonable Suspicion/Cause  ☐ Post Accident  ☐ Return to Duty  ☐ Follow-up  ☐ Other

H. Panel: If a panel is not selected below, Alere will use the default for the Facility listed above. See back of copy 4 for additional panel instructions.

☐ A Primary Default Panel
☐ B 3532 3DR BE/OPIEX AMPHS
☐ C 3536 3DR BE/OPIEX ETOH
☐ D 3533 3DR BE/OPIEX BARB
☐ E 3534 3DR BE/OPIEX PCP
☐ Other:

I. Collection Site Name & Address:
NYS DOCCS/
SAME AS STEP 1

Collector Phone No.:

Collector Number: 82650

**STEP 2: TO BE COMPLETED by Collector** - Within 4 minutes, read temperature of specimen.
Within range? ☒ Yes 90°-100°F / 32°-38°C  ☐ No  ☐ Below 90°F / 32°C  ☐ Above 100°F / 38°C
Oral Fluid, temperature  ☐ not applicable
Split Specimen: ☒ No  ☐ Yes
Observed: ☐

Remarks:

**STEP 3: TO BE COMPLETED by Collector and Donor** - Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s).

**STEP 4: TO BE COMPLETED by Donor**
I certify that I provided my specimen to the collector; that I have not adulterated it in any manner; each specimen container used was sealed with tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen container is correct.

X
Date:
Donor Date of Birth (Mo./Day/Yr.)

**STEP 5: CHAIN OF CUSTODY** - Initiated by Collector and completed by Laboratory
I certify that the specimen given to me by the donor identified above was collected, labeled, sealed, and released in accordance with applicable requirements.

X (signature)
PRINT Collector Name (First, MI, Last)
Signature of Collector
Date Collected (Mo./Day/Yr.)
Time Collected  ☐ AM ☒ PM

Specimen Bottle(s) Released to: COURIER
Service Transferring Specimen to Lab

**STEP 6: TO BE COMPLETED by Lab**
RECEIVED AT LAB:
X (signature)
Signature of Accessioner
PRINT Accessioner Name (First MI Last): Demitra Barnes
Date (Mo/Dy/Yr): 2017
Primary Specimen Seal Intact? ☒ Yes  ☐ No, Enter Remark
Specimen(s) Released to: TEMPORARY STORAGE

Remarks:

SPECIMEN ID NO. 206707509
B (SPLIT)
Date (Mo/Day/Yr): 8/3/17
Donor's Initials: DB
206707509 SPECIMEN BOTTLE SEAL