# EXHIBIT 4

| | | TITLE | NO. |
|---|---|---|---|
| NEW YORK STATE | Corrections and Community Supervision | **Drug Tests for Employees** | 2115 |
| | | | DATE |
| | | | 09/30/2020 |
| | **DIRECTIVE** | | |
| SUPERSEDES | | DISTRIBUTION | PAGES | DATE LAST REVISED |
| DIR #2115 Dtd. 09/27/18 | | A | PAGE 1 OF 8 | |
| REFERENCES (Include but are not limited to) Public Health Law Section 575; Civil Service Law; Correction Law Section 77, OTETA, Employee Manual 2.12; ACA Expected Practices: 5-ACI-1C-16, 2-CO-1C-20, 4-APPFS-3C-01, 2-CI-6C-2, 1-ABC-1C-06 | | APPROVING AUTHORITY *[signature]* | | |

I. **PURPOSE**: The purpose of this directive is to establish a written policy and procedure for conducting drug tests of employees within the Department of Corrections and Community Supervision (DOCCS) when:

   A. There is a reasonable suspicion that such employee is under the influence of or using illegal drugs or controlled substances, or abusing prescription drugs; or

   B. The employee is being tested pursuant to federal or state law; or

   C. The employee regularly comes into contact with illegal drugs or controlled substances through their assignments with the Department's Office of Special Investigations Narcotics Unit and/or K-9 Units.

II. **POLICY STATEMENT**: The use of illegal drugs or controlled substances or abuse of prescription drugs by an employee, regardless of the position held, adversely affects the Department's ability to safely confine and supervise inmates, and returned parole violators. Additionally, it impairs the efficiency of the workforce and endangers the lives and security of employees, inmates, parolees, and the community. The use of illegal drugs and/or abuse of prescription drugs undermine public trust and are, therefore, strictly prohibited by the Department. In order to identify possible illegal drug or controlled substance usage or abuse of prescription drugs, and to curtail the introduction of illegal drugs or controlled substances into Department facilities or its offices, procedures to test for the use of illegal drugs or controlled substances shall be established. DOCCS, however, will not engage in random drug testing of its employees except as required by federal and/or state law, or for staff who regularly come into contact with illegal drugs or controlled substances.

DOCCS, as part of its concern for its employees, recognizes that the use of illegal drugs or controlled substances causes problems which may have a far reaching negative effect on the security of the Department's facilities, its offices, the community, and on the health, well-being, and productivity of the workforce. It was with problems such as these in mind that DOCCS established its Employee Assistance Program (EAP). The Department fully supports EAP and encourages employees who are addicted to illegal drugs or controlled substances or abusing prescription drugs to seek the confidential services of EAP at their workplace. Information concerning the use of illegal drugs or controlled substances revealed to EAP representatives by an employee cannot be used against the employee for any purpose.

### III. APPLICATION

A. An employee of the Department may be ordered to submit to testing to determine the presence of illegal drugs or controlled substances or abuse of prescription drugs, where reasonable suspicion to believe illegal substance abuse exists, as required by federal and/or state law, or where staff regularly come into contact with illegal drugs or controlled substances. Refusal to submit to testing may result in suspension and disciplinary charges.

B. Random Drug Tests: Pursuant to federal law governing employees who operate motor vehicles that qualify under the Omnibus Transportation Employee Testing Act (OTETA) and staff who regularly come into contact with illegal drugs or controlled substances through their assignments with the Department's Office of Special Investigations Narcotic Unit and/or K-9 Units will be randomly selected for drug testing.

C. Balance of Interests: In determining whether to order a test in a particular case, the Department must balance an employee's reasonable expectations of privacy from unreasonable intrusions against the Department's interest in assuring the integrity and fitness of its employees and the safety and security of its facilities, offices, and the community; as well as the requirements of federal and/or state law that requires the random drug testing of an employee and for those staff who regularly come into contact with such substances through their assignments with the Department's Office of Special Investigations Narcotics Unit and/or K-9 Units.

D. Justifications: The order for a urinalysis must be justified by law or based upon a reasonable suspicion that the employee has reported for duty under the influence of illegal controlled substances, is abusing prescription drugs, or is engaging in the use, distribution, or sale of illegal drugs or controlled substances either on or off duty; and, where staff regularly come into contact with such substances through their assignments with the Department's Office of Special Investigations Narcotics Unit and/or K-9 Units.

E. Reasonable Suspicion Definition: While the "reasonable suspicion" standard does not lend itself to precise definition or mechanical application, vague or unparticularized or unspecified or rudimentary hunches, or intuitive feelings do not meet the standard. Reasonable suspicion is the quantum of knowledge sufficient to induce an ordinarily prudent and cautious person to act under the circumstances. Reasonable suspicion must be directed at a specific person and be based on specific and articulable facts and the logical inferences and deductions that can be drawn from those facts.

Reasonable suspicion may be based upon, among other matters: observable phenomena, such as direct observation of use and/or the physical symptoms of using or being under the influence of illegal drugs or controlled substances such as, but not limited to, slurred speech, disorientation, a pattern of abnormal conduct or erratic behavior, or information provided either by reliable and credible sources or which is independently corroborated. The Department will not test solely on the information of inmates or anonymous sources unless the information is corroborated by reliable and credible sources or objective evidence.

    F.   <u>Notice While Off Duty</u>: Employees who are off duty at the time they are ordered to submit to a suspicion-based test are required to promptly report to the designated workplace to submit a specimen, as directed and outlined in this directive. Failure to promptly comply with such an order may lead to disciplinary action, which may include suspension from duty without pay.

        NOTE: Employees who are off duty at the time they are selected for a random-based drug test will NOT be ordered to report to the designated workplace; however, they will be tested upon their return to work.

    G.   Members of the Office of Special Investigations Narcotics Unit will be subject to random selection for drug testing.

    H.   Members of the Department K-9 Unit will be subject to random selection for drug testing.

    I.   If an employee has requested EAP assistance for their abuse of an illegal drug or controlled substance or prescription drug, prior to any incident leading independently to the determination of the existence of reasonable suspicion of use of an illegal drug or controlled substance, or the employee's arrest for use, possession, or distribution of an illegal drug or controlled substance, and such employee is following the EAP program, that employee will not be subject to drug testing under this policy for such prior use, but this policy will apply with full force to any subsequent incident where reasonable suspicion is found.

## IV. PROCEDURE

    A.   Whenever an employee has been randomly selected, or when a supervisor reasonably suspects based on their own observations, that an employee has reported for duty in an impaired condition due to the use of an illegal drug or controlled substance or the abuse of prescription drugs, such information should immediately be communicated to the Superintendent, Regional Director, Unit Head, or their designee. Such communication should be made as confidentially as reasonably possible.

        Section IV, paragraphs B through K outline the procedures to be implemented in the event of a reasonable suspicion test. Paragraphs L through N outline the procedure to implement a random drug test. For employees being tested under the OTETA, the specific procedures outlined in the statute will be followed.

    B.   <u>Investigation</u>: The Superintendent, Regional Director, Unit Head, or the Officer of the Day will assign a supervisor to act as an investigator to conduct an investigation of the allegation. The purpose of the investigation is to determine if the available facts objectively indicate that reasonable suspicion exists to pursue the inquiry. If the allegation is based on someone's observation of the suspected employee, the investigator must personally observe the suspected employee. If there is any reason to believe the suspected employee is trafficking illegal drugs or controlled substances, the fact shall be immediately communicated to the Office of Special Investigations. The investigation should be conducted with a degree of discretion that will ensure, as much as possible, the dignity and privacy of the employee.

C. <u>Assessment of Facts</u>: When the Superintendent, Regional Director, Unit Head, Officer of the Day, or Deputy Chief or above from the Office of Special Investigations determines the available facts objectively indicate that reasonable suspicion exists and that a test of the employee would yield a positive result for the presence of an illegal drug or controlled substance or its metabolites, documentation of such facts shall be maintained. The investigator shall be instructed to complete Sections I and II of <u>Form #1240</u>, "Request for Alcohol or Drug Testing of Employee." In completing Section I, the investigator shall exercise care and accurately document the objective facts contributing to and forming the basis for the reasonable suspicion. These facts must include a description of the employee's appearance and demeanor, the observations of witnesses, and the nature and source of the information.

Where the employer's source of information constituting reasonable suspicion that a chemical test for a particular employee would likely yield a positive result consists in whole or in part of observations made by a "confidential informant" (confidential informant meaning a full-time employee or agent of a governmental law enforcement agency), the source of that part of the information shall be deemed to be sufficiently identified by recording the name and location of the governmental law enforcement agency involved without disclosing the name of the "confidential informant."

In disciplinary proceedings based on refusal to submit to drug testing or upon testing positive for use, the Department cannot be compelled to reveal the name of any "confidential informant" nor can evidence of the contents of the report of such "confidential informant" be suppressed because of the Department's refusal to reveal the name of such "confidential informant."

D. <u>Requesting Authorization</u>: The Superintendent, Regional Director, Unit Head, Officer of the Day, Deputy Commissioner/Chief of Investigation, Assistant Commissioner/ Assistant Chief of Investigations, Deputy Chief, Assistant Deputy Chief from the Office of Special Investigations, or higher ranking authority shall communicate all such information to an attorney assigned to the Office of the Deputy Commissioner and Counsel for a determination that facts required to establish reasonable suspicion are present and have been properly documented. The Communications Control Center shall be contacted in order to assist in locating an attorney during hours when these offices are closed. The attorney's determination shall be recorded on <u>Form #1240</u>.

E. <u>Authorization</u>: If the attorney determines that reasonable suspicion does not exist to order testing, no testing shall occur, no documentation of the request may be kept in the employee's personnel records, and evidence of the incident may never be used against any employee in any subsequent disciplinary proceeding or for any other purpose. When an attorney finds that reasonable suspicion exists, the attorney's name shall be included in the documentation, and the testing procedures below shall be followed.

F. <u>Notice of Rights</u>: An employee of the Department ordered to submit to testing shall be advised that they have the right to consult with counsel or a union representative, and the employee shall be afforded an opportunity, if they request, to consult with counsel or a union representative provided that counsel or the union representative responds without undue delay. Reasonable efforts to assist the employee in contacting a union representative or counsel, if the employee desires, shall be made.

The employee shall also be given a verbal explanation, in the presence of counsel or a union representative if requested, of the factual basis for the reasonable suspicion including a description of the conduct leading to the formation of a reasonable suspicion, the employee's actions, the relevant dates, places, and times thereof, and the source of information (see limitation on disclosure of "confidential informant" in Section IV-C above). The Superintendent, Regional Director, Unit Head, Officer of the Day, or their designee shall either read the summary of objective facts to the employee as recorded on the appropriate form by the attorney or reiterate the objective facts to the employee as verbally communicated by the attorney pursuant to Section IV-D.

G. <u>Order to Submit Urine Specimen - Location, Collection, and Documentation</u>: The Superintendent, Regional Director, Unit Head, or their designee shall order the employee to proceed to the Superintendent's office, Bureau Chief's office, or other secure and private location with toilet facilities, free from inmate or public scrutiny, escorted by a supervisor. Where reasonably practical, the supervisor shall be of the same gender as the person to be tested. An investigator may also serve as the escort employee. Where reasonably practical, the investigator shall be of the same gender as the person to be tested. The escorting employee shall bring the appropriate form authorizing such testing to the Superintendent, Bureau Chief, Unit Head, or their designee. Specimen collection shall occur in a private setting free of any substances which may be used to contaminate the specimen. The escorting employee will provide the employee to be tested with a container to be used to collect the sample. Visual observation of urination will not be required or permitted, except in emergencies where no other means are possible, to ensure the integrity of the sample. When visual observation is permitted, the observer will be of the same gender as the employee. If the employee is unable to provide a specimen when requested, they will be given a reasonable time period considering all relevant circumstances to provide the sample. The employee shall be paid for all their time including overtime where applicable. The specimen will be provided by the employee being tested and the filled container will be immediately given to the escorting employee, who will examine the sample to determine that it is the appropriate color, clarity, temperature, and volume.

The specimen will be immediately sealed and tagged in three separate containers; two of which the Department will maintain in custody and the third will be delivered to the employee. The Department will maintain secure custody of the two specimen containers in such a way so that they can be later tested for the presence of illegal drugs or controlled substances. Chain of custody documentation for each specimen shall be maintained from receipt to destruction. Urine specimens obtained from an employee assigned to a Community Supervision field office shall be transferred to a correctional facility within 24 hours for secure storage in accordance with established procedures. Any urine specimen not immediately transferred to a correctional facility shall be secured in a locked and secure location in the office of the Bureau Chief.

The chain of custody will reflect the date and time the specimen was secured and by whom it was secured. The employee and their counsel or union representative shall be permitted to be present to observe the sealing and tagging of the specimen containers.

In the event that the Superintendent's or Bureau Chief's office is not available, an alternate location shall be selected. Care should be taken in all cases to ensure that the privacy of the employee is considered and that every reasonable effort is made to respect the dignity of the employee. The alternate location shall be selected so as to minimize the possibility of public attention. A supervisor in all cases shall ensure the integrity of the testing procedures, including placement of the specimen in the containers and the surrender and transfer of the specimen.

Throughout all aspects of these procedures, including transportation and the actual obtaining of the sample, every reasonable effort must be made to ensure the dignity and privacy of the employee. All reasonable efforts shall be made to avoid public attention, and these procedures shall be carried out as discreetly as reasonably possible.

H. <u>Testing Urine Specimens</u>: The first specimen container will undergo a laboratory testing by gas chromatography with mass spectrometry or an equivalent scientifically accepted method that provides quantitative data about the detected drug or drug metabolites. Only a laboratory licensed pursuant to Section 575 of the Public Health Law shall be used to analyze and report on samples. Any positive result of said test will be retested for verification by a confirming test conducted by the laboratory testing the first sample. The confirming test will also be gas chromatography with mass spectrometry or an equivalent scientifically accepted method.

I. <u>Employee Right to Confirmation Testing</u>: If the results of the confirming test of the original specimen are positive, the employee will have the right, within ten working days of the employee's notification in writing of the results of the confirming test, to have the second specimen tested by a licensed laboratory of their choice for testing by gas chromatography with mass spectrometry or an equivalent scientifically accepted method at State expense. A copy of the lab report of such test will be provided to the employee.

J. If the test of the second specimen is confirmed positive, or if the employee does not exercise their right to have the second specimen tested where the confirming test of the first sample has been positive, the employee will be notified and will be given the opportunity to present evidence and/or information that the positive test resulted from prescribed or over the counter drugs or that special circumstances may have affected the test results. The employee will be required to sign a Health Insurance Portability and Accountability Act (HIPAA) compliant release of information in the event that a physician must be contacted for clarification or verification.

K. If the results of either of the two confirming tests are negative, the request for testing, the finding of reasonable suspicion, as well as results of said tests will not be kept and Section IV-E of this directive will apply. If both confirming tests are positive, or if the first confirming test is positive and the employee waives their right to request a second confirming test, the employee may be suspended by the Director of Labor Relations pending disciplinary charges, provided such suspension is appropriate under the applicable collective bargaining agreement, and law, rule, or regulation.

L. Employees assigned to the Office of Special Investigations Narcotics Unit and the Department K-9 Unit who are randomly selected for drug testing will be directed to submit to a presumptive test utilizing a saliva test kit. The saliva test will be administered without regard to gender. Test kit instructions will be implemented consistent with the manufacturer's directions.

Employees assigned to these units who are subject to such testing will be tested by a unit supervisor at a salary grade level of M-2 or equivalent/above. Unit supervisors will be subject to testing by the Assistant Commissioner with oversight of the unit. All efforts will be made to avoid the appearance of any conflict of interest. Additionally, unit supervisors and Executive Team members who fraternize with subordinate staff (i.e., dating, married, cohabit, etc.) shall not administer a saliva test of the subordinate. Failure to act in a manner that avoids the appearance of a conflict of interest may lead to disciplinary action.

M. Saliva test results will be immediately reported to the Director of the Bureau of Labor Relations. If the saliva test results in a presumptive positive, reasonable suspicion exists to administer a urine test as specified in Section IV, paragraphs F through K. If the presumptive saliva test result is negative, no further action is required. Regardless of the outcome of the saliva test, the employee may take possession of the test if they so desire; however, presumptive positive test results will be photographed by the employer as evidence of reasonable suspicion and a basis to order the employee to submit a urine specimen for testing.

N. The Bureau of Labor Relations will notify the appropriate Superintendent, HUB Supervising Superintendent, the Office of Special Investigations, or Special Operations regarding which employee(s) have been randomly selected for a saliva test. The Bureau of Labor Relations will maintain a record of the employees that are randomly selected and the test results for the purpose of compliance review with applicable federal and state law.

## V. GENERAL PROVISIONS

A. <u>Refusals</u>: An employee's refusal to submit to ordered testing, or their refusal to cooperate in all aspects of the testing procedures, shall be communicated to the Director of Labor Relations and may subject the employee to suspension and severe disciplinary charges, as appropriate, under the applicable collective bargaining agreement, and law, rule, or regulation.

B. At the conclusion of the testing procedures, the employee may be suspended if the facts independent of the test results justifies the actions and constitute a basis under the applicable collective bargaining agreement or law.

In a case where an employee is judged too impaired to continue work, they are to be assisted with making arrangements for transport home. The employee is also to be strongly encouraged not to drive. If the employee insists on driving, the facility Superintendent, Regional Director, Unit Head, or other appropriate authority should be immediately notified.

C. <u>Results</u>: When written reports of the laboratory tests are received by the Superintendent, Regional Director, or Unit Head, a copy shall be forwarded to the employee who was tested, and an additional copy forwarded to the Bureau of Labor Relations.

D. <u>Other</u>: Each test ordered under this policy shall be reviewed by the Bureau of Labor Relations to ensure compliance with all applicable procedures.

E. <u>Laws, Rules, Regulations, Negotiated Agreements</u>: Where any provision of this policy is determined to be in conflict with the applicable collective bargaining agreement or law, statute, rule, or regulation, including Civil Service Law Section 72 and Section 75, said collective bargaining agreement, law, statute, rule, or regulation will control. It is not the intent of this policy to abridge any rights an employee may have under applicable collective bargaining agreements, laws, statutes, rules, or regulations including Civil Service Time and Attendance Rules, and any rights that an employee may have for discretionary treatment under the Civil Service Time and Attendance Rules.

F. <u>Disciplinary Action</u>: If the investigation results in a just cause for discipline as defined in the applicable collective bargaining agreement, discipline shall be imposed with regard to the circumstances of each case. Time in service and prior offenses or lack thereof may be considered in determining appropriate penalties.

G. <u>Records</u>: Records concerning positive tests for suspicion and random-based drug testing will be maintained confidentially in the employee's medical file. Administrative records of the random selection drug testing will be maintained by the Bureau of Labor Relations for purposes of compliance review with established laws, rules, and regulations.

H. <u>Defenses</u>: An employee who claims to have been tested under this policy without reasonable suspicion, or in a manner inconsistent with this policy or federal/state law, can assert such claim as a defense in any disciplinary proceeding brought against them. Nothing in this policy shall be construed to deprive an employee of any other appropriate defenses or arguments in a disciplinary arbitration.