```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
   RUBEN WILLS,                                             :
                                                            :   MEMORANDUM DECISION
                                       Plaintiff,           :   AND ORDER
                                                            :
                  - against -                               :   20-cv-4432 (BMC)
                                                            :
   MICROGENICS CORPORATION;                                 :
   THERMO FISHER SCIENTIFIC, INC.;                          :
   ANTHONY J. ANNUCCI; DELTA                                :
   BAROMETRE; SHAUNTE MITCHELL;                             :
   MALIKAH MCCROREY; SHEILA                                 :
   WOODBERRY; and CAPTAIN DOE;*                             :
                                                            :
                                       Defendants.          :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff Ruben Wills, a former inmate, has sued several prison officials under 42 U.S.C. § 1983. These officials – Anthony Annucci, Delta Barometre, Shaunte Mitchell, Malikah McCrorey, and Sheila Woodberry ("defendants") – allegedly violated the Due Process Clause of the Fourteenth Amendment by punishing plaintiff for having medication that he was permitted to take. When defendants moved to dismiss the Second Amended Complaint, plaintiff abandoned his claims against Barometre, Mitchell, and McCrorey, opting to pursue only the claims against Annucci and Woodberry.

Because plaintiff has not adequately alleged that Annucci was personally involved in the constitutional violation, the claims against him are dismissed. But the motion is denied as to

---

* Although the Second Amended Complaint asserted a claim against "Corey Woodberry," the parties have clarified that her name is Sheila Woodberry. The Clerk is directed to correct the docket sheet accordingly.

Woodberry, for plaintiff has stated a claim under § 1983 and Woodberry is not entitled to qualified immunity.

## SUMMARY OF THE COMPLAINT

Plaintiff is a former member of the New York City Council. He was convicted on corruption charges but later had his conviction reversed on direct appeal. See People v. Wills, 186 A.D.3d 1416, 130 N.Y.S.3d 93 (2d Dep't 2020). While still incarcerated, he was granted temporary work release and moved to Lincoln Correctional Facility in New York City, where he could work in the community. Plaintiff alleges that, after approximately eight months in the temporary work release program, he "was issued a Notification of Earned Eligibility Determination, which qualified him to be released on parole."

At Lincoln, plaintiff specifically told the medical staff that he needed over-the-counter medication for his allergies. They responded that he could indeed take this medication. The Lincoln Offenders Orientation Manual also specifically stated that he could take over-the-counter medications. Plaintiff chose Benadryl.

Before his release, however, plaintiff was given a random drug test. The test used an Indiko Plus urinalysis analyzer manufactured by Microgenics Corporation. It returned positive for "Buprenorphine II." According to plaintiff, "buprenorphine is most commonly used as a component of Suboxone, a drug used to combat opiate addiction." That drug helps individuals "control the symptoms of their addiction," and it "is almost never abused recreationally." Plaintiff also notes that he had no history of any drug use. He thus alleges that the test was a false positive, a result of Microgenics's defective urinalysis analyzer.

Despite plaintiff's demands for a second test, defendants held a disciplinary hearing on March 30, 2019. Plaintiff did not prevail. He "was given 30 days keeplock, suspended for 60 days, and a referral to the Temporary Release Committee." He immediately appealed.

2

Two days after the hearing, plaintiff told an officer that Benadryl might have caused the false-positive result. The next day, April 2, plaintiff was removed from eligibility for presumptive parole. Officers then searched plaintiff's locker and uncovered Benadryl pills. Plaintiff alleges that he "was issued a violation," even though Benadryl was a permitted over-the-counter medication.

On April 8, plaintiff had another disciplinary hearing. Woodberry determined that plaintiff had violated Lincoln's rules by possessing Benadryl, even though the rules "made it clear" that plaintiff "was in fact permitted to take this medication." On April 9, the Temporary Release Committee decided to remove plaintiff from the program, and plaintiff was transferred to another facility.

Plaintiff made several more appeals, but to no avail. At the last step, Annucci, as the Acting Director of the New York State Department of Corrections and Community Supervision, "personally reviewed the case and confirmed the disciplinary decision." Soon after, plaintiff's "Earned Eligibility Determination was revoked."

Plaintiff insists that, because of defendants' actions, he remained incarcerated for "months later than he should have been." He "would have been granted parole on April 2," he explains, but he was not released until August 12. Plaintiff does not specify why he was released, and the release date is over a year before the Appellate Division reversed plaintiff's conviction.

After his release, plaintiff brought the § 1983 claims against defendants, alleging violations of his right to procedural due process. Plaintiff also brought state-law negligence claims against Microgenics and its parent corporation. In a separate decision, I denied a motion to dismiss the negligence claims. See Wills v. Microgenics Corp., No. 20-cv-4432, 2021 WL

1838275 (E.D.N.Y. May 7, 2021). Defendants then brought this motion. They maintain that plaintiff has not stated a claim under § 1983 and that they are entitled to qualified immunity.

## DISCUSSION

### I. Legal Framework

"Federal courts 'examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" Francis v. Fiacco, 942 F.3d 126, 141 (2d Cir. 2019) (quoting Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." Id. (quoting Wilkinson v. Austin, 545 U.S. 209, 221 (2005)). If a plaintiff has a protected liberty interest, "the next question is 'what process is due.'" Id. at 142 (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). Due process is a flexible concept, and "the quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error." Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 13 (1979).

Here, the complaint raises three possible deprivations of a protected liberty interest: (1) the removal of plaintiff's eligibility for presumptive parole; (2) the revocation of his "Earned Eligibility Determination"; and (3) his removal from the temporary work release program. According to plaintiff, these deprivations occurred without due process of law because he did not receive adequate notice that Lincoln's rules prohibited his possession of Benadryl. I will address each deprivation in turn.[1]

---

[1] Plaintiff can count himself fortunate that "the essence of a cause of action is found in the facts alleged and proven by the plaintiff, not the particular legal theories articulated." Oneida Indian Nation of N.Y. v. Cty. of Oneida, 617

4

## II.     Removal from Eligibility for Presumptive Parole

Plaintiff has not adequately alleged that this first deprivation occurred without due process.  Even if plaintiff had a liberty interest in his eligibility for presumptive parole, the claim has a timing problem.  The removal occurred on April 2 – a day after plaintiff told an officer that Benadryl might have caused a false positive, but nearly a week *before* the April 8 hearing when Woodberry found that plaintiff had violated Lincoln's rules by possessing Benadryl.  Thus, plaintiff has not connected the loss of his alleged liberty interest to the procedures that allegedly violated his due process rights.  No other facts suggest that the loss of eligibility for presumptive parole did not comport with the Due Process Clause.  Therefore, this deprivation cannot support a claim under § 1983.

## III.    Revocation of the Earned Eligibility Determination

### A.     The Constitutional Violation

The complaint also suggests that defendants violated plaintiff's due process rights when they revoked his "Earned Eligibility Determination."  This claim has some of the same timing problems as the first one, but those problems are not fatal this time around.  Plaintiff alleges that, on April 3, correction officers discovered the Benadryl in his locker; then, on April 8, the officers determined that the possession violated Lincoln's rules; and then, on May 7, the "Earned

---

F.3d 114, 139 (2d Cir. 2010).  Plaintiff's legal theory is unclear.  Speaking only in generalities, he insists that his "punishment" for having Benadryl violated his due process rights.  Yet the complaint never quite specifies what punishment he suffered because of the Benadryl, as opposed to what punishment he suffered because of the false-positive drug test.

Plaintiff's memorandum of law attempts to add clarity, but it simply misstates the facts.  It first argues that plaintiff "had a liberty interest in being released on parole."  It then states, "once parole has been granted, the incarcerated person has a liberty interest in being released, and thus is entitled to due process protections . . . if parole is going to be rescinded."  But plaintiff does not allege that he was granted parole and then had it revoked – he alleges that he was removed from eligibility for presumptive parole, was removed from the temporary work release program, and lost his "Earned Eligibility Determination."  Because "[f]actual allegations alone are what matters," McEachin v. McGuinnis, 357 F.3d 197, 199 n.2 (2d Cir. 2004) (quoting another source), I will assess whether those three deprivations occurred without due process of law.

5

Eligibility Determination" was revoked. The linkage between the violation and the revocation is not entirely clear. Still, I will assume that the revocation occurred, at least in part, due to the Benadryl violation, since "a court . . . must draw all reasonable inferences in favor of the plaintiff" when ruling on a motion to dismiss. Li v. City of New York, 246 F. Supp. 3d 578, 597 (E.D.N.Y. 2017).

The liberty interest for this claim stems from § 805 of the New York Correction Law. It provides:

> No earlier than two months prior to the inmate's eligibility to be paroled . . . the commissioner shall review the inmate's institutional record to determine whether he has complied with the assigned [work and treatment] program. If the commissioner determines that the inmate has successfully participated in the program he may issue the inmate a certificate of earned eligibility. Notwithstanding any other provision of law, an inmate who is serving a sentence with a minimum term of not more than eight years and who has been issued a certificate of earned eligibility, shall be granted parole release at the expiration of his minimum term . . . unless the board of parole determines that there is a reasonable probability that, if such inmate is released, he will not live and remain at liberty without violating the law and that his release is not compatible with the welfare of society.

N.Y. Correct. Law § 805. Under this section, "a finding of successful participation in a work and treatment program will be reflected in the issuance of a 'certificate of earned eligibility.'" Schwartz v. Dennison, 339 F. App'x 28, 30 (2d Cir. 2009) (summary order), aff'g, Schwartz v. Dennison, 518 F. Supp. 2d 560, 572-73 (S.D.N.Y. 2007). But "the receipt of an earned eligibility certificate does not preclude the Board from denying parole, nor does it eliminate the Board's discretion in making the release decision." Wallman v. Travis, 18 A.D.3d 304, 307, 794 N.Y.S.2d 381, 386 (1st Dep't 2005).[2]

---

[2] The complaint does not quite track the statutory language, for it alleges that plaintiff "was issued a Notification of Earned Eligibility Determination, which qualified him to be released on parole." I understand this language to mean that plaintiff received a certificate of earned eligibility, not that he was merely eligible to receive one.

6

Once an inmate receives a certificate of earned eligibility, § 805 "creates a liberty interest." Schwartz, 339 F. App'x at 30; see also Schwartz, 518 F. Supp. 2d at 572-73 (addressing the subject in depth); Clarkson v. Coughlin, 898 F. Supp. 1019, 1040 (S.D.N.Y. 1995) (same). In most cases involving this interest, inmates claim that state officials violated their due process rights by denying their parole applications. See, e.g., Schwartz, 339 F. App'x at 29. In these circumstances, § 805 entitles inmates to "some due process protections in the consideration of their parole applications," but "those protections are satisfied where an inmate is afforded an opportunity to be heard and a statement of reasons for the denial of parole." Id. at 30.

This case is not quite identical. The issue is not whether plaintiff was deprived of a liberty interest when the board denied parole, as the complaint does not even mention the parole board. Instead, plaintiff seems to allege that he was deprived of a liberty interest when defendants revoked the certificate of earned eligibility, separate and apart from any parole hearing. It is not clear how this process unfolded, nor is it clear that plaintiff had a liberty interest in the certificate itself. Yet I need not resolve these issues – even if plaintiff had a liberty interest in the certificate, and even if the deprivation of that liberty interest violated plaintiff's due process rights, those rights were not "clearly established" for purposes of qualified immunity.

### B. Qualified Immunity

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mullenix v. Luna, 577 U.S. 7, 11 (2015) (quoting another source). Qualified immunity thus requires a two-pronged inquiry: (1) whether officials "violated a federal statutory or constitutional right" and (2) whether "the unlawfulness of their

7

conduct was clearly established." District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting another source). Courts may "exercise their sound discretion in deciding which of the two prongs . . . should be addressed first." Pearson v. Callahan, 555 U.S. 223, 236 (2009). Thus, "a court need not determine whether a defendant violated a plaintiff's rights if it decides that the right was not clearly established." Liberian Cmty. Ass'n of Conn. v. Lamont, 970 F.3d 174, 186 (2d Cir. 2020).

A right is "clearly established" if "the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." Wesby, 138 S. Ct. at 589 (quoting another source). The Supreme Court "ha[s] repeatedly told courts not to define clearly established law at a high level of generality." Mullenix, 577 U.S. at 12 (alteration adopted) (quoting another source). Although "case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." White v. Pauly, 137 S. Ct. 548, 551 (2017) (cleaned up).

The claim at hand falls short of this standard. Under the "flexible, context-dependent approach" of a procedural due process claim, "it will be a rare case in which prior precedents have definitively resolved a novel claim of procedural due process." Francis, 942 F.3d at 149. "That makes particularly fertile ground for qualified immunity, given that state officials can be liable only for violations of rights that have been established 'beyond debate' and with 'particularity' by existing constitutional precedents." Liberian Cmty. Ass'n, 970 F.3d at 192 (alterations adopted) (quoting Francis, 942 F.3d at 149). Here, plaintiff has not pointed to a case in which a court identified a due process violation involving the revocation of a certificate of earned eligibility. See id. (upholding qualified immunity where the court could not identify any cases articulating federal procedural due process protections in a particular context); Francis, 942

8

F.3d at 149 (same). Nor is this a case where "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question." Taylor v. Riojas, 141 S. Ct. 52, 53-54 (2020) (quoting Hope v. Pelzer, 536 U.S. 730, 741 (2002)) (addressing "deplorably unsanitary conditions" at a prison that no reasonable official could have viewed as consistent with the Eighth Amendment).

In these circumstances, therefore, plaintiff's alleged procedural due process right was not clearly established. Defendants are entitled to qualified immunity with respect to this claim, and the revocation of plaintiff's earned eligibility certificate cannot support a claim under § 1983.

## IV. Removal from the Temporary Work Release Program

### A. The Constitutional Violation

The complaint suggests that defendants violated plaintiff's due process rights when they removed him from the temporary work release program. That removal occurred the day after the disciplinary hearing where Woodberry determined that plaintiff had violated Lincoln's rules by possessing Benadryl. But once again, the complaint does not allege that the removal occurred *because* of the Benadryl violation. And it is difficult to tell whether the confusion stems from inartful pleading or deliberate ambiguity.

Some of the allegations actually suggest that the drug test, and not the Benadryl, caused plaintiff's removal from the temporary work release program. For instance, plaintiff alleges that he was originally "referr[ed] to the Temporary Release Committee" after the March 30 hearing (when "a disposition was rendered against [plaintiff] based solely on the fact that Indiko Plus urinalysis analyzer . . . produced a positive test"), not after the April 8 hearing (when Woodberry found that plaintiff had violated Lincoln's rules by possessing Benadryl). Plaintiff also alleges that, when Annucci affirmed plaintiff's removal from the temporary work release program, Annucci cited the Microgenics drug test, not the Benadryl. It thus remains ambiguous whether

9

the Benadryl, the false-positive drug test, or some combination of the two caused plaintiff's removal from the temporary work release program.

Seizing on this ambiguity, defendants insist that plaintiff's removal from the temporary work release program had nothing to do with Benadryl. They assert that the only punishment for the Benadryl violation was 15 days' loss of recreation. Defendants then note that this punishment would not implicate a protected liberty interest. See, e.g., Nicholas v. O'Connor, 205 F.3d 1324 (2d Cir. 2000) (summary order) (holding that 30 days' loss of recreation did not implicate a protected liberty interest).

To bolster this argument, defendants have attached various documents to their motion to dismiss. One document, titled "Disciplinary Hearing Disposition Ordered," references the April 8 hearing and notes that plaintiff faced charges of "unauthorized medication" and "smuggling." The document then says, "Woodberry is affirmed." It goes on to mention a single penalty: 15 days' loss of recreation. Read alongside the complaint, this document strongly suggests that plaintiff's Benadryl possession had no connection to the removal from the temporary work release program. And if that is true, plaintiff has not adequately connected the deprivation of a protected liberty interest to the procedures that violated his due process rights.

Still, I cannot reach that conclusion at this stage. Although defendants' documents do not directly contradict any allegations in the complaint, they invite the Court to re-read the complaint in an entirely different light. The Second Circuit recently cautioned against that practice:

> Unless a court is considering extrinsic material that is incorporated by reference into the complaint or on which the complaint relies or other matters of which the court can take judicial notice, it should remain within the non-movant's pleading when deciding both Rule 12(c) and 12(b)(6) motions. And where a court does draw from such extrinsic material, it must construe all reasonable inferences in the non-movant's favor.

Lively v. WAFRA Inv. Advisory Grp., Inc., No. 20-2709, 2021 WL 3118943, at *7 (2d Cir. July 23, 2021). Thus, "a court may not resolve the motion by weighing the plausibility of competing allegations or by considering evidence extrinsic to the non-movant's pleading without converting the motion to one for summary judgment." Id. at *7.

Here, a fair inference from the complaint is that, at a minimum, the discovery of Benadryl set in motion a disciplinary process that culminated in the removal from the work release program and the loss of the earned eligibility certificate. And, importantly, defendants' documents do not establish that the Temporary Release Committee did not consider the Benadryl charges when removing plaintiff from the program. So to untangle the disciplinary proceedings, as defendants have requested, would be to impermissibly draw an inference against plaintiff on this motion to dismiss. See id. at *6 (noting that "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side"); cf. Higazy v. Templeton, 505 F.3d 161, 175 (2d Cir. 2007) (noting in a § 1983 case that "issues of causation depend on the resolution of issues of fact" that often "cannot be decided as a matter of law" on a motion to dismiss). Thus, drawing all inferences in plaintiff's favor, I will once again assume that prison officials removed plaintiff from the program in part because he had the Benadryl pills. See Li, 246 F. Supp. 3d at 597.[3]

In procedural due process cases, the Second Circuit has long held that "a prisoner has a protected liberty interest in continuing in a work release program." Kim v. Hurston, 182 F.3d 113, 117 (2d Cir. 1999); see also Anderson v. Recore, 446 F.3d 324, 328 (2d Cir. 2006) ("Anderson II"); Anderson v. Recore, 317 F.3d 194, 201 (2d Cir. 2003) ("Anderson I"); Friedl v.

---

[3] Defendants have not suggested that I can take judicial notice of the various documents they attached to their complaint. And because defendants raise potentially fact-intensive issues of causation, I decline to convert their motion into a motion for summary judgment. Cf. Higazy, 505 F.3d at 175 (noting that causation issues are often for the fact finder to resolve).

City of New York, 210 F.3d 79, 84 (2d Cir. 2000); Tracy v. Salamack, 572 F.2d 393, 395-96 (2d Cir. 1978) (per curiam). Thus, the only question is whether the procedures that defendants employed in removing plaintiff from the temporary work release program comported with the Due Process Clause.

They did not. Although "the full panoply of rights" is not available in the prison context, Wolff v. McDonnell, 418 U.S. 539, 556 (1974), officials must provide at least the "minimum due process requirements" before removing an inmate from a work release program, Friedl, 210 F.3d at 84. "One of the basic components of due process of law is notice of what is prohibited." Richardson v. Coughlin, 763 F. Supp. 1228, 1235 (S.D.N.Y. 1991). That means an inmate has a due process right not to be punished for conduct if the inmate did not receive notice that the conduct was prohibited. See Wallace v. Nash, 311 F.3d 140, 143 (2d Cir. 2002) (holding that an inmate could not be deprived of good time credits for using a pool cue because a pool cue was not a prohibited weapon under the prison rules); Coffman v. Trickey, 884 F.2d 1057, 1060 (8th Cir. 1989) (holding that an inmate "was deprived of liberty without due process of law when [a prison official] punished him for conduct that was not proscribed"). Because plaintiff alleges that he did not receive notice that possessing Benadryl was prohibited, and that he was removed from the temporary work release program as a result, he has adequately alleged a violation of his due process rights. See Anderson I, 317 F.3d at 201; Wallace, 311 F.3d at 143.[4]

---

[4] In their reply memorandum, defendants advance an unavailing argument that Heck v. Humphrey, 512 U.S. 477 (1994), bars these claims. Defendants may have waived this argument by saving it for reply. See Muhammad v. Close, 540 U.S. 749, 755 (2004) (per curiam) (holding that state officials waived a particular argument under Heck); see also Smith v. Saunders, No. 9:14-cv-440, 2017 WL 11358417, at *1 n.1 (N.D.N.Y. Jan. 16, 2017) (noting that "[w]hether Heck is a doctrine of jurisdiction or a waivable objection is disputed"). Even if Heck is nonwaivable, it is of no help to defendants. Under Heck, a plaintiff cannot proceed under § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S. at 487. That rule does not apply where, as here, "the conviction or sentence has been reversed on direct appeal" and the plaintiff is no longer in custody. Id.; see also Teichmann v. New York, 769 F.3d 821, 829-30 (2d Cir. 2014) (Calabresi, J., concurring). Also, the Second Circuit has expressly held that Heck does not apply to procedural due process claims based on the removal from temporary work release programs, as these claims challenge the "conditions of confinement" and not

### B.     Qualified Immunity

The doctrine cannot shield defendants from this claim.  Time and again, the Second Circuit has deemed it "clearly established" that "an inmate on work release had a legally protectable interest in remaining on such release."  Kim, 182 F.3d at 120; see also Anderson I, 317 F.3d at 197-201 (surveying the case law).  Likewise, "the minimal procedural due process requirements of notice and reasons for terminating a protected liberty interest have long been established."  Kim, 182 F.3d at 120.  So after officials removed inmates from temporary work release programs without satisfying those minimum due process requirements, the Circuit has repeatedly rejected appeals to qualified immunity.  See Anderson I, 317 F.3d at 201 (holding that the right to a hearing was clearly established); Kim, 182 F.3d at 120 (holding that the right to notice and a hearing was clearly established).

This case is no different.  "A fundamental tenet of due process is that to be sanctioned one must have received fair notice that one's allegedly violative conduct was prohibited," and "[i]t is beyond cavil that this principle applies within the prison setting."  Coffman, 884 F.2d at 1060; accord Wallace, 311 F.3d at 143.  Because plaintiff alleges that defendants did not provide that notice before they removed him from the temporary work release program, defendants cannot claim qualified immunity at this stage.  See Anderson I, 317 F.3d at 201; Kim, 182 F.3d at 120.

### C.     Individual Involvement

Finally, defendants abandon their joint defense and argue that Annucci was not sufficiently involved in the violation to be held liable under § 1983.  Because § 1983 does not provide for supervisor liability, "a plaintiff must plead that each Government-official defendant,

---

"the overall length of confinement."  Kim, 182 F.3d at 118 n.3.  Given this framework, it comes as no surprise that defendants cite virtually no cases to support their argument under Heck.

13

through the official's own individual actions, has violated the Constitution." Tangreti v. Bachmann, 983 F.3d 609, 616 (2d Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)). "Failing to correct another officer's violation does not suffice," nor does "affirming the outcome of a prison hearing." Smart v. Annucci, No. 19-cv-7908, 2021 WL 260105, at *5 (S.D.N.Y. Jan. 26, 2021).

For Annucci, the complaint relies upon just that sort of allegation. After detailing the hearing where "Woodberry found that [plaintiff] had violated the rules at Lincoln Correctional Facility by having Benadryl," the complaint explains that "the Temporary Release Committee determined that [plaintiff] should be removed from the program, and [plaintiff] was transferred to Sing Sing Correctional Facility." Only then does Annucci come into the frame. The complaint alleges:

> After [plaintiff's] supporters attempted to intervene, Acting Commissioner Annucci, who supervised all of [the New York State Department of Corrections and Community Supervision], personally reviewed the case and confirmed the disciplinary decision, by letter on April 12, 2019. In that letter, he stated that the [Microgenics] tests were a "primary" and not a preliminary test, relying on [Microgenics's] false representations, and fooled by the lack of disclosures by [Microgenics].

In his memorandum, plaintiff maintains that "[t]his is personal involvement," as Annucci "ratified the decision to punish [plaintiff] for having Benadryl, and let that false charge remain, knowing that it certainly would impact [plaintiff's] ability to retain his parole eligibility." These allegations say nothing about the Benadryl violation, and courts in this Circuit have repeatedly held that affirming a disciplinary decision, without more, is not sufficient personal involvement for liability under § 1983. See Abdur-Raheem v. Selsky, 598 F. Supp. 2d 367, 370 (W.D.N.Y.

14

2009) (collecting cases). Therefore, the claims against Annucci are dismissed, even though the motion must be denied as to Woodberry.[5]

## CONCLUSION

Defendants' motion to dismiss [60] is granted in part and denied in part as set forth above. The claims against defendants Annucci, Barometre, Mitchell, and McCrorey are dismissed.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       August 9, 2021

---

[5] Defendants do not contend that Woodberry lacked sufficient involvement under § 1983, nor have they argued that plaintiff should have sued the members of the Temporary Release Committee instead. Cf. Anderson II, 446 F.3d at 330 (noting that "only the [Temporary Release Committee], not the Tier III hearing officer, had authority to recommend [the plaintiff's] removal from the temporary release program"); Kim, 182 F.3d at 119 (holding the chairperson of the Temporary Release Committee liable under § 1983 where the plaintiff did not receive notice and a hearing before her removal from the program). I conclude that defendants have waived these arguments for purposes of this motion.