UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RUBEN WILLS,

                    Plaintiff,

                v.                                     No. 20-cv-4432 (BMC) (VMS)

MICROGENICS CORPORATION, et al.,

                    Defendants.


# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SHEILA WOODBERRY'S MOTION FOR SUMMARY JUDGMENT


                                        LETITIA JAMES
                                          *Attorney General*
                                          *State of New York*
                                        Attorney for State Defendants
                                        28 Liberty Street
                                        New York, New York 10005


LINDA FANG
  *Special Litigation Counsel*
JENNIFER L. GOLTCHE
  *Assistant Attorney General*
      *of Counsel*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF THE CASE............................................................................................3

    A.    Factual Background.............................................................................................3

    B.    Procedural History............................................................................................10

STANDARD OF REVIEW ...............................................................................................11

ARGUMENT ....................................................................................................................11

    POINT I............................................................................................................................11

    DEFENDANT WOODBERRY IS NOT LIABLE FOR PLAINTIFF'S REMOVAL
    FROM THE TEMPORARY RELEASE PROGRAM ..............................................11

        A.    Woodberry Was Not Personally Involved in the Revocation
               Determination Made by Others. .................................................................11

        B.    The Disciplinary Determination Rendered by Woodberry Was Not the
               Proximate Cause of Plaintiff's Removal from the Temporary Release
               Program. ...................................................................................................14

    POINT II .........................................................................................................................16

    PLAINTIFF WAS NOT DEPRIVED OF DUE PROCESS IN ANY EVENT ........................16

        A.    Plaintiff Received All the Process He Was Due Prior to His Removal
               from the Temporary Release Program. ......................................................16

        B.    Plaintiff Cannot Defeat Summary Judgment by Manufacturing a  Factual
               Dispute as to His Purported Lack of Notice. .............................................19

CONCLUSION.................................................................................................................21

i

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................... 11, 19

*Anderson v. Recore*, 446 F.3d 324 (2d Cir. 2006) ....................................................................... 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 11

*Bedoya v. Coughlin*, 91 F.3d 349 (2d Cir. 1996) ........................................................................ 18

*Brody v. Vill. of Port Chester*, 434 F.3d 121 (2d Cir. 2005) ....................................................... 18

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................................... 11

*Cox v. Malone*, 199 F. Supp. 2d 135 (S.D.N.Y. 2002) ................................................................ 18

*Dubois v. Beaury*, No. 21-2096-cv, 2022 WL 1701497 (2d Cir. May 27, 2022) ........................ 13

*Friedl v. City of N.Y.*, 210 F.3d 79 (2d Cir. 2000) ................................................................. 16, 17

*Hurd v. Fredenburgh*, 984 F.3d 1075 (2d Cir. 2021) .................................................................. 13

*Jackson v. Johnson*, 30 F. Supp. 2d 613 (S.D.N.Y. 1998) .......................................................... 13

*Jeffreys v. City of N.Y.*, 416 F.3d 549 (2d Cir. 2005) .................................................................. 20

*Kalwasinski v. Morse*, 201 F.3d 103 (2d Cir. 1999) ................................................................... 16

*Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986) ............................................... 19

*Koulkina v. City of New York*, 559 F. Supp. 2d 300 (S.D.N.Y. 2008) ........................................ 13

*Muhammad v. Pico*, No. 02-cv-1052, 2003 WL 21792158 (S.D.N.Y. Aug. 5, 2003) ................ 13

*Myers v. County of Nassau*, 825 F. Supp. 2d 359 (E.D.N.Y. 2011) ........................................... 20

*Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458 (2d Cir. 2006) ......................... 18

*Scott v. Coughlin*, 78 F. Supp. 2d 299 (S.D.N.Y. 2000) ............................................................. 13

*Singh v. Holder*, 473 F. App'x 78 (2d Cir. 2012) ....................................................................... 18

*Sira v. Morton*, 380 F.3d 57 (2d Cir. 2004) ............................................................................... 16

**Cases**                                                             **Page(s)**

*Superintendent v. Hill*, 472 U.S. 445 (1985) ........................................................................ 17

*Townes v. City of N.Y.*, 176 F.3d 138 (2d Cir. 1999) ........................................................ 14

*Williams v. Smith*, 781 F.2d 319 (2d Cir. 1986) ........................................................... 12, 13

*Wright v. Smith*, 21 F.3d 496 (2d Cir. 1994) ................................................................... 11

*Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000) ............................................................... 15

**Rules**

Fed. R. Civ. P. 56 ................................................................................................................ 11

**Regulations**

7 N.Y.C.R.R. § 1900.1 ......................................................................................................... 4

7 N.Y.C.R.R. § 1904.1 ..................................................................................................... 4, 14

7 N.Y.C.R.R. § 1904.2 ..................................................................................... 4, 5, 12, 14, 15

7 N.Y.C.R.R. § 1904.4 ......................................................................................................... 5

7 N.Y.C.R.R. § 270.2 ........................................................................................................... 3

7 N.Y.C.R.R. § 270.3 ........................................................................................................... 3

7 N.Y.C.R.R. Part 253 ......................................................................................................... 3

Defendant Sheila Woodberry, by her attorney, Letitia James, Attorney General of the State of New York, respectfully submits this memorandum of law in support of her motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. [1]

## PRELIMINARY STATEMENT

In this 42 U.S.C. § 1983 action, Plaintiff Ruben Wills alleges that Defendant Sheila Woodberry, an official of the New York State Department of Corrections and Community Supervision ("DOCCS"), violated his due process rights by effecting his removal from the work release program. The uncontroverted record adduced through discovery, however, demonstrates that Woodberry is entitled to summary judgment on this sole remaining claim on a number of independent grounds.

First, Woodberry was not personally involved in the decision to remove Plaintiff from the work release program and thus cannot be liable under § 1983 for this deprivation. Woodberry's involvement in Plaintiff's case was limited to presiding over the disciplinary hearing concerning Plaintiff's unauthorized possession of three Benadryl pills. But the record is uncontroverted that Plaintiff's removal from work release resulted not from the disciplinary determination that Woodberry issued concerning the Benadryl, but following a wholly distinct hearing and decision-making process conducted by members of the Temporary Release Committee and the Superintendent of the facility where Plaintiff resided. Woodberry did not attend that separate

---

[1] The following are also submitted in support of Defendant Sheila Woodberry's motion for summary judgment: (1) Notice of Defendant's Motion for Summary Judgment, dated February 5, 2024; (2) Defendant's Local Civil Rule 56.1 Statement ("56.1"); (3) Declaration of Jennifer L. Goltche, dated February 5, 2024; (4) Declaration of Defendant Sheila Woodberry, dated February 1, 2024; (5) Declaration of John Harper, dated January 31, 2024; and (6) Exhibits in Support of Defendant's Motion for Summary Judgment ("Exhibit Volume"). All citations herein to "Ex." refer to the Exhibit Volume. All references herein to "Pl's Dep." are made to the Deposition of Plaintiff Ruben Wills, taken on April 23, 2023, excerpts of the transcript of which is annexed as Exhibit C to the Exhibit Volume.

hearing or participate in the discrete decision-making connected to Plaintiff's work release participation. Nor did Woodberry possess the legal authority to remove Plaintiff from the work release program to begin with.

Second, the discipline that Woodberry issued was not the proximate cause of Plaintiff's removal from work release. To the contrary, the independent recommendation of the Temporary Release Committee and the Superintendent's approval of that recommendation concerning Plaintiff's suitability for continued work release followed a separate hearing where Plaintiff appeared and testified on his own behalf. The intervening decisions made by the Temporary Release Committee and the Superintendent in the exercise of their independent judgment break the chain of causation between the disciplinary determination Woodberry issued and Plaintiff's subsequent loss of work release privileges.

Third, even assuming there are triable issues of fact as to Woodberry's personal involvement and causation, Plaintiff's claim is still foreclosed because the undisputed facts demonstrate that Plaintiff received all the process he was due—both for the discipline and his removal from work release. The factual record is devoid of any procedural defect in either of the hearings preceding Plaintiff's discipline and the revocation of his work release privileges. And Woodberry did not violate Plaintiff's due process rights by failing to consider Plaintiff's purported lack of notice defense where Plaintiff failed to raise any such defense at his disciplinary hearing. Nor can Plaintiff, after the fact, manufacture a factual dispute as to his supposed lack of notice of the relevant rule where, among other things, the record is uncontroverted that he was found to have violated the same rule based on nearly identical conduct less than a year prior.

In sum, because no reasonable trier of fact can find in favor of Plaintiff based on this factual record, Woodberry is entitled to entry of judgment in her favor.

## STATEMENT OF THE CASE

**A.     Factual Background**

**1.     DOCCS Policies and Procedures**

Individuals in the custody of DOCCS are required to abide by the rules set forth in the Standards of Inmate Behavior handbook throughout their time in DOCCS' custody. These rules apply to all DOCCS facilities. Defendant's Local Civil Rule 56.1 Statement ("56.1") ¶¶ 1-2; 7 N.Y.C.R.R. § 270.2; Declaration of John Harper, dated January 31, 2024 ("Harper Decl.") ¶ 3; *see generally* Ex. A (DOCCS, *Standards of Inmate Behavior*: *All Institutions* (rev. Nov. 2017)); Ex. B at WILLS 000538 (Lincoln Correctional Facility, *Offenders' Orientation Manual* (rev. Nov. 16, 2016)) (stating that "[a]ll [DOCCS] Rules (Standards of Offender Behavior, revised 2/06) apply to you while you are an offender at this facility"). All persons are provided a copy of the Standards of Inmate Behavior handbook when they first enter DOCCS custody. Harper Decl. ¶ 4. When an incarcerated individual is charged with violating a DOCCS rule, the individual is entitled to a disciplinary hearing where the charge will be adjudicated by a neutral hearing officer. *See generally* 7 N.Y.C.R.R. Part 253. Depending on the seriousness of the offense, the charge may be adjudicated in a Tier I, II, or III hearing. 7 N.Y.C.R.R. § 270.3(a).

As relevant here, Rule 113.14 of DOCCS' Institutional Rules of Conduct states that incarcerated individuals "shall not possess outdated or unauthorized types or quantities of medication." 56.1 ¶ 3; Ex. A at STATE DEF 000965; 7 N.Y.C.R.R. § 270.2(B)(14)(iv)(113.14). Within DOCCS facilities, all medication for incarcerated individuals must be issued by DOCCS medical staff. 56.1 ¶ 5; Harper Decl. ¶¶ 5-6; Woodberry Decl. ¶ 7; Ex. D at 15:2-16:4 (Tr. of Dep. of Maryann Genovese, dated Nov. 7, 2023). When medication is provided to an incarcerated individual, DOCCS policy requires that staff record the medication in the individual's medical

records. 56.1 ¶ 6; Harper Decl. ¶ 5. These policies apply to both prescription and over-the-counter medications. 56.1 ¶ 7; Harper Decl. ¶ 5; Ex. D at 28:21-29:4; Ex. P (Plaintiff's DOCCS Medication List, July 1, 2017 to September 1, 2020 (WILLS 000439-000443)); Ex. E at STATE DEF 000135, § II.B.1 (DOCCS, Division of Health Services Policy 3.03: *Distribution of Over-The-Counter Medication*).

Incarcerated individuals participating in the Temporary Release Program are permitted to take over-the-counter medications when they are outside a DOCCS facility during an approved furlough. Harper Decl. ¶ 7; Ex. B at WILLS 000557, ¶ 10. However, individuals are not permitted to transport any medications into a DOCCS facility or to possess medications inside a DOCCS facility without the express authorization of DOCCS medical staff. Harper Decl. ¶ 7; Woodberry Decl. ¶ 7; Ex. F at 3:20-3:48, 4:38-4:46 (Audio Recording of June 14, 2018 Disciplinary Hearing (STATE DEF 001275)); Ex. A at STATE DEF 000965, Rule 113.14.

Administration of DOCCS' Temporary Release Program, including the procedures for removing a participant from the Temporary Release Program, are set forth in regulation. *See* 7 N.Y.C.R.R. §§ 1900.1, 1904.2 (removal procedures). Only the Superintendent of the facility where the individual is housed has the authority to remove the individual from the Temporary Release Program, and may do so only following a full hearing before the Temporary Release Committee conducted pursuant to the required procedures. *Id.* § 1904.2(f), (h)(1)-(8), (p). An individual's violation of DOCCS or Temporary Release Program rules may be considered by the Temporary Release Committee and the Superintendent in determining whether an individual is suitable for continued participation in work release based on an enumerated list of factors. *Id.* § 1904.1(c)(3). Although sustained Tier III violations are required to be referred to the Temporary Release Committee for consideration, the hearing officer conducting a Tier I or Tier II disciplinary hearing

has the discretion to decide whether to refer a sustained Tier I or Tier II violation for the Temporary Release Committee's review. *Id.* § 1904.2(f). An individual who is removed from the Temporary Release program may appeal that decision to the "central office director of Temporary Release." *Id.* § 1904.4.

### 2.   Plaintiff's April 8, 2019 Discipline and Hearing

Plaintiff was in the custody of DOCCS from August 2017 to August 2019. In March and April 2019, he was in the custody of Lincoln Correctional Facility, where he participated in the Temporary Release Program. As part of the Temporary Release Program, plaintiff worked and lived outside the facility four nights a week, and returned to Lincoln in the evenings the remaining three nights. Pl.'s Dep. 59:7-19.

On April 3, 2019, Plaintiff's locker at Lincoln was searched after a canine detection unit alerted. 56.1 ¶ 8; Ex. G at STATE DEF 000006, 000013-000014 (Hearing Packet for April 8, 2019 Disciplinary Hearing). The search recovered a prescription medication bottle containing two different types of pills. 56.1 ¶ 8; Ex. G at STATE DEF 000006, 000011. Three of the pills were identified by DOCCS medical staff as Benadryl gel caps. 56.1 ¶ 8; Ex. G at STATE DEF 000006, 000009-000011. Plaintiff's medical records maintained by DOCCS at the time did not indicate that he had been issued the Benadryl by medical staff. 56.1 ¶ 9; Ex. G at STATE DEF 000006; *see also* Ex. P at WILLS 000439-000442.

On April 4, 2019, Plaintiff was issued a written misbehavior report by Lieutenant Malikah McCrorey, charging Plaintiff with violating Rule 113.14, which prohibits the unauthorized possession of medication within a DOCCS facility, and Rule 114.10, which prohibits the smuggling of prohibited items into a DOCCS facility. 56.1 ¶ 10; Ex. G at STATE DEF 000006. On April 5, 2019, Plaintiff was served with the misbehavior report citing the rules that Plaintiff

was charged with violating. 56.1 ¶ 11; Ex. G at STATE DEF 000002 ("Serving date/time 04/05/19 12:08PM").

On April 8, 2019, a disciplinary hearing was conducted arising out of Plaintiff's possession of Benadryl. 56.1 ¶ 12; Ex. G at STATE DEF 000002; Woodberry Decl. ¶ 5. Defendant Sheila Woodberry was assigned as the hearing officer. Ex. G at STATE DEF 000012. During the hearing, Woodberry advised Plaintiff of the charges pending against him, and asked Plaintiff where he had obtained the Benadryl. Plaintiff acknowledged that he possessed the medication, but declined to provide any information to Woodberry about where he obtained the Benadryl. 56.1 ¶¶ 13, 15; Ex. H at 11:40-11:50, 12:28-12:55, 14:43-15:26 (Audio Recording of April 8, 2019 Disciplinary Hearing (STATE DEF 001277)); Woodberry Decl. ¶ 10. Plaintiff initially stated that he wanted to call several witnesses, but later opted not to do so when Woodberry asked. 56.1 ¶¶ 13-14; Pl.'s Dep. 96:20-97:17, 97:24-98:3, 97:18-20 (acknowledging had opportunity to call witnesses, but "changed his mind" on doing so at hearing); Ex. H at 3:25-3:45, 17:41-17:56 (Audio Recording of April 8, 2019 Disciplinary Hearing). No witnesses testified at the April 8 hearing. 56.1 ¶ 14; Ex. G at STATE DEF 000002, ¶ 13. Plaintiff did not claim during the hearing that DOCCS medical staff had authorized his possession of Benadryl, or that he was unaware of or misunderstood the rule prohibiting his possession of unauthorized medication. 56.1 ¶ 16; *see generally* Ex. H (Audio Recording of April 8, 2019 Disciplinary Hearing); Woodberry Decl. ¶ 12. To the contrary, during the April 8, 2019 hearing, Plaintiff stated: "If the medication's not prescribed, then its unauthorized medication . . . I understand that." *See* Ex. H at 12:28-12:38 (Audio Recording of April 8, 2019 Disciplinary Hearing).

Based on the misbehavior report stating that DOCCS medical staff did not issue the Benadryl to Plaintiff, and Plaintiff's testimony acknowledging his possession of the medication,

Woodberry found Plaintiff guilty of violating Rule 113.14 for possessing the unauthorized medication, and imposed a penalty of a 15-day loss of recreation privileges. 56.1 ¶ 17; Ex. G at STATE DEF 000002-000005; Woodberry Decl. ¶ 13. Woodberry found Plaintiff not guilty of the smuggling charge. Ex. G at STATE DEF 000003; Woodberry Decl. ¶ 13. Woodberry read her determination into the hearing record and provided Plaintiff with a copy of the written determination stating the evidence she considered in making her determination. 56.1 ¶ 18; Ex. H at 18:38-19:55 (Audio Recording of April 8, 2019 Disciplinary Hearing); Woodberry Decl. ¶ 14. She did not have any interactions with Plaintiff following the April 8, 2019 hearing concerning this discipline. 56.1 ¶ 19; Pl.'s Dep. 102:6-10. Woodberry did not refer this discipline to the Temporary Release Committee. 56.1 ¶ 19; Woodberry Decl. ¶ 16.

### 3. Plaintiff's April 9, 2019 Temporary Release Committee Hearing and Removal from Work Release

On April 9, 2019, three members of the Temporary Release Committee conducted a hearing to consider Plaintiff's suitability for continued participation in the Temporary Release Program. 56.1 ¶¶ 20, 23; Ex. I at STATE DEF 000176 (Temporary Release Program Form 4187, dated April 9, 2019). This hearing was initiated by the referral of Lieutenant Christopher Hiney, based upon a separate Tier II disciplinary violation that Hiney sustained against Plaintiff on March 30, 2019 following a hearing. 56.1 ¶ 21; Ex. I ("Referred to the TRC by: Lt. Hiney"); Ex. J at STATE DEF 000030 ("Recommended TRC review hearing") (Hearing Packet for March 30, 2019 Disciplinary Hearing). Specifically, the March 30, 2019 discipline concerned a misbehavior report that was issued to Plaintiff on March 27, 2019, when his urine tested positive for Buprenorphine, an illicit substance; the report charged Plaintiff with drug use in violation of DOCCS and

Temporary Release Program rules. 56.1 ¶ 22; Ex. J at STATE DEF 000032; Ex. A at STATE DEF 000962, Rule 108.14, STATE DEF 000966, Rule 113.24.

The members of the Temporary Release Committee who conducted Plaintiff's April 9, 2019 work release hearing were Assistant Deputy Superintendent of Programs Shaunte Mitchell, Offender Rehabilitation Coordinator Caraballo, and Correction Officer James Fucci. 56.1 ¶ 23; Ex. I. Plaintiff was provided notice of the hearing and attended in person. 56.1 ¶ 24; Ex. I ("Inmate Present: Yes"); Pl.'s Dep. 102:11-103:2, 104:8-22. Both of Plaintiff's recent disciplines were discussed during the April 9 hearing. *See* Ex. I. Plaintiff stated during the Temporary Release Committee hearing that he had acquired the Benadryl outside of Lincoln, but claimed that he had "misread the rule" prohibiting his possession of the medication within Lincoln. *Id*. Following the April 9, 2019 hearing, the Temporary Release Committee recommended Plaintiff's removal from the Temporary Release Program on the grounds that he "appears unsuitable for continued participation" as a result of his disciplinary infractions. 56.1 ¶ 25; Ex. I. Lincoln's Superintendent Delta Barometre approved the Committee's recommendation and removed Plaintiff from work release later the same day. 56.1 ¶ 26; Ex. I.

Plaintiff appealed his removal from the Temporary Release Program. That appeal was denied on July 29, 2019. The decision denying the appeal stated that Plaintiff's removal from the Temporary Release Program was "warranted" because his "violations of drug use" rules "indicates an inability to conform with the temporary release contract." 56.1 ¶ 27; Ex. K at STATE DEF 000178 (Notice of Disapproval for Work Release Remvl Appeal).

Woodberry did not testify or appear at the Temporary Release Committee hearing. 56.1 ¶ 28; Pl.'s Dep. 105:19-106:10; Woodberry Decl. ¶ 18. Nor was she aware that the discipline she rendered concerning Plaintiff's possession of Benadryl was considered by the Temporary Release

8

Committee and Superintendent Barometre in removing Plaintiff from the Temporary Release Program. 56.1 ¶ 29; Woodberry Decl. ¶ 17. Woodberry was not consulted by the Temporary Release Committee or Superintendent Barometre about Plaintiff's suitability for continued participation in work release, and did not participate in the decision-making by the Committee and Superintendent Barometre that effected Plaintiff's removal. 56.1 ¶ 30; Woodberry Decl. ¶¶ 19-20; Pl.'s Dep. 105:19-107:8.

### 4. Plaintiff's Prior Discipline and Temporary Release Committee Hearing for Another Unauthorized Possession Charge

The April 9, 2019 Temporary Release Committee hearing was not the first time the Committee had been called on to consider Plaintiff's continued participation in work release. In June 2018, Plaintiff appeared before another Temporary Release Committee after he was found guilty of the unauthorized possession of medication. 56.1 ¶¶ 33, 35; Ex. L (Temporary Release Program Form 4187, dated June 21, 2018). In that instance, a search of Plaintiff's locker at Hudson Correctional Facility in June 2018, where Plaintiff was at the time, yielded 14 NyQuil gel caps mixed in with Plaintiff's prescription medication. 56.1 ¶ 32; Ex. M at STATE DEF 000049 (Hearing Packet for June 14, 2018 Disciplinary Hearing). During the June 14, 2018 disciplinary hearing for the alleged violation of Rule 113.14, Plaintiff claimed that he obtained the NyQuil from another DOCCS facility,[2] but the hearing officer explained that "any medication you have in this facility has to come from this facility" or must otherwise be authorized by DOCCS medical

---

[2] During the June 2018 disciplinary hearing, at the request of the hearing officer, a DOCCS nurse reviewed Plaintiff's medical records and contacted the medical department at the other DOCCS facility where Plaintiff claimed he had obtained the medication, but was unable to confirm Plaintiff's claim. The nurse also testified that NyQuil was not a medication that was issued by DOCCS medical staff to individuals because it contains alcohol. Ex. F at 6:50-7:55, 9:10-10:26, 12:45-14:08, 15:10-16:05 (Audio Recording of June 14, 2018 Disciplinary Hearing).

staff. 56.1 ¶ 34; Ex. F at 3:20-3:48, 4:38-4:46 (Audio Recording of June 14, 2018 Disciplinary Hearing) ("you got to go through medical" to get authorization to possess medication within facility). The hearing officer sustained the unauthorized possession charge following the hearing. 56.1 ¶ 33; Ex. M at STATE DEF 000045-000046; *see* Pl.'s Dep. 107:9-120:2.

On June 21, 2018, the Temporary Release Committee at Hudson Correctional Facility considered Plaintiff's June 2018 discipline for unauthorized possession of medication at a hearing. Ex. L (Temporary Release Program Form 4187, dated June 21, 2018). Following that hearing, the Committee recommended that Plaintiff be counseled "regarding the importance of complying with all rules and regulations," and warned that "future non-compliance will result in sanctions being imposed," but permitted Plaintiff to continue participating in the Temporary Release Program. 56.1 ¶ 35; Ex. L. In July 2018, Plaintiff was approved for overnight furloughs as part of his work release notwithstanding his June 2018 unauthorized possession violation. 56.1 ¶ 36; Ex. N (Temporary Release Program Form 4187, dated July 5, 2018).

## B.    Procedural History

In 2020, Plaintiff commenced this action against defendants Microgenics Corporation and Thermo Fisher Scientific Inc. (the Microgenics Defendants), and a number of DOCCS officials alleging negligence and due process violations. *See* Compl. (ECF Doc. No. 1). By a Memorandum Decision & Order dated August 10, 2021, the Court dismissed Plaintiff's claims as against several of the DOCCS defendants, and narrowed Plaintiff's claims as against Defendant Sheila Woodberry—the only remaining individual DOCCS defendant.[3] *See* Mem. Decision & Order,

---

[3] In response to defendants' motion to dismiss, Plaintiff abandoned his claims as against defendants Delta Baromette, Malikah McCrorey, and Shaunte Mitchell. *See* Pl.'s Mem. of Law in Opp. to State Defendants' Motion to Dismiss, dated June 14, 2021 (ECF Doc. No. 66-1) at 1 n.1.

dated Aug. 10, 2021 (ECF Doc. No. 71). Specifically, the Court held that the only cognizable liberty interest for purposes of Plaintiff's procedural due process claim against Woodberry was his removal from the Temporary Release Program. *Id.* at 5-7, 11-12.

**STANDARD OF REVIEW**

A party is entitled to summary judgment when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A "material fact" is one that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To defeat summary judgment, the nonmoving party must establish more than the "mere existence of a scintilla of evidence" in support of the party's position. *Id.* at 252. One cannot avert summary judgment with conclusory statements or speculation, but rather must present competent evidence upon which a rational trier of fact could find in the party's favor. *Id.* at 248.

**ARGUMENT**

**POINT I**

**DEFENDANT WOODBERRY IS NOT LIABLE FOR PLAINTIFF'S
REMOVAL FROM THE TEMPORARY RELEASE PROGRAM**

**A.      Woodberry Was Not Personally Involved in the Revocation
         Determination Made by Others.**

Liability under 42 U.S.C. § 1983 requires a defendant's personal involvement in the alleged constitutional deprivation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). In the context of due process, personal involvement

11

generally requires the individual defendant to have "participated directly" in the decision effecting the deprivation. *See, e.g.*, *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

As this Court has held, the only liberty interest that is cognizable for Plaintiff's due process claim in this action is his removal from work release. *See* Mem. Decision & Order at 5-7, 11-12. However, Plaintiff's removal from work release here occurred not as part of the disciplinary proceeding that Woodberry presided over, but only following a separate hearing specific to his continued work release participation. *See* 7 N.Y.C.R.R. § 1904.2(h) (procedures for work release hearing effecting removal); *Anderson v. Recore*, 446 F.3d 324, 326 (2d Cir. 2006) (due process requires separate work release hearing following discipline before individual can be removed). Woodberry's involvement was limited to serving as the hearing officer for Plaintiff's disciplinary hearing concerning the unauthorized possession of medication charge, for which she imposed a 15-day loss of recreation penalty. 56.1 ¶¶ 12, 17, 28, 30; Woodberry Decl. ¶¶ 5, 13. There is no factual dispute that Woodberry was not present at Plaintiff's Temporary Release hearing on April 9, 2019, and did not have any role in the separate decision-making that led to the recommendation of the Temporary Release Committee and the decision of Superintendent Barometre to remove Plaintiff from the Temporary Release Program. 56.1 ¶ 28, 30; Woodberry Decl. ¶¶ 18-20; Pl.'s Dep. 105:19-107:8 (disclaiming knowledge that Woodberry was involved in the work release revocation determination); Ex. I.

Nor can it be disputed that Woodberry, in her sole capacity as a hearing officer, lacked the authority to revoke Plaintiff's work release participation to begin with. 56.1 ¶ 31; 7 N.Y.C.R.R. § 1904.2(f) ("The hearing officer may not impose as a penalty removal from the temporary release program. Only the temporary release committee can remove an inmate from the program."). Woodberry's lack of authority to effect Plaintiff's removal from the Temporary Release Program

12

further confirms her lack of personal involvement in that alleged deprivation. *See, e.g.*, *Dubois v. Beaury*, No. 21-2096-cv, 2022 WL 1701497, *4 (2d Cir. May 27, 2022) (defendant who "lacked statutory authority" to revoke plaintiff's gun license not personally involved); *Koulkina v. City of New York*, 559 F. Supp. 2d 300, 317-18 (S.D.N.Y. 2008) (where defendant "did not have the authority to take action with respect to any constitutional violation plaintiffs may have suffered … [i]t necessarily follows that the allegations are insufficient to plead the personal involvement" of defendant); *see also Hurd v. Fredenburgh*, 984 F.3d 1075, 1086 (2d Cir. 2021) (suggesting official who lacked authority to act could not be liable for constitutional violation based on failure to act).

Under these circumstances, even assuming that there was some defect with the disciplinary determination that Woodberry made (which there was not, as explained *supra* at 17-18), the fact that the discipline Woodberry issued was considered at the subsequent Temporary Release Committee hearing is insufficient to constitute the requisite personal involvement as a matter of law. *See, e.g.*, *Williams*, 781 F.2d at 324 (defendant who authored misbehavior report but did not make decision on discipline and was not present for hearing not personally involved); *Dubois*, 2022 WL 1701497, *4 (prosecutor who wrote letter to judge concerning plaintiff's mental state and asking judge to take "this matter and . . . take such action that it deems appropriate" as to plaintiff's pistol license not personally involved in license revocation decision made by judge); *Scott v. Coughlin*, 78 F. Supp. 2d 299, 314 (S.D.N.Y. 2000) (defendants who filed allegedly false charges against plaintiff not liable for deprivation of due process occurring at the disciplinary hearing); *Jackson v. Johnson*, 30 F. Supp. 2d 613, 616-18 (S.D.N.Y. 1998) (officials who did not participate in decision-making at challenged disciplinary hearing not personally involved); *Muhammad v. Pico*, No. 02-cv-1052, 2003 WL 21792158, *16 (S.D.N.Y. Aug. 5, 2003) (same) (collecting cases).

**B.**      **The Disciplinary Determination Rendered by Woodberry Was Not the Proximate Cause of Plaintiff's Removal from the Temporary Release Program.**

In general, the "intervening exercise of independent judgment" breaks the chain of causation between an allegedly wrongful act and a subsequent deprivation. *See Townes v. City of N.Y.*, 176 F.3d 138, 147 (2d Cir. 1999). Here, the members of the Temporary Release Committee and Superintendent Barometre made the independent recommendation and decision to revoke Plaintiff's work release participation, following a separate hearing process, without any input or influence from Woodberry. 56.1 ¶¶ 23, 25-26, 28, 30; Ex. I; Woodberry Decl. ¶¶ 18-20; *see Townes*, 176 F.3d at 147 (absent evidence that police officer who conducted unlawful search "mislead or pressured" judge who denied suppression motion, officer not liable for plaintiff's subsequent conviction on account of the unlawful search). Plaintiff had the opportunity to contest his disciplinary violation for unauthorized possession (and for drug use), and to raise any defenses or mitigating claims for why he should be permitted to continue in work release before the Temporary Release Committee on April 9, 2019. *See* Ex. I; Pl.'s Dep. 102:11-104:22. And as a matter of law, the Temporary Release Committee and Superintendent Barometre had the discretion to recommend and decide whether Plaintiff should be permitted to continue in work release following the hearing process, upon consideration of the factors enumerated under the regulations. *See* 7 N.Y.C.R.R. § 1904.1(b)-(c), § 1904.2(f)-(h); Ex. I.

The undisputed record demonstrates that the Temporary Release Committee recommended and Superintendent Barometre decided that Plaintiff was unsuitable for continued work release participation based on Plaintiff's statements during the Temporary Release hearing—admitting to purchasing the Benadryl outside of Lincoln, and claiming that he "misread" the rule prohibiting his possession of the medication within the facility. 56.1 ¶ 25; Ex. I. And the written denial of

Plaintiff's appeal of his work release removal stated that his removal was "warranted" based on the drug use violation, with no mention about the unauthorized possession violation issued by Woodberry. 56.1 ¶ 27; Ex. K at STATE DEF 000178. These uncontroverted facts undermine any finding of causation. *See Zahrey v. Coffey*, 221 F.3d 342, 352 n.8 (2d Cir. 2000) (but-for causation lacking where "intervening decision-maker would have precipitated the deprivation of liberty, even in the absence of the antecedent misconduct").

Nor is there factual support for any finding that Plaintiff's removal from the Temporary Release Program was a reasonably foreseeable consequence of the unauthorized possession violation that Woodberry sustained. *See id.* at 351-52. It is undisputed that Woodberry was not aware that the discipline she issued on April 8 was considered by the Temporary Release Committee. 56.1 ¶ 29; Woodberry Decl. ¶ 17; *see* Pl.'s Dep. 105:19-107:8 (no knowledge that Woodberry was involved in removal from work release). And Woodberry did not refer Plaintiff's unauthorized possession violation to the Temporary Release Committee, nor was she required to do so. 56.1 ¶ 19; Woodberry Decl. ¶ 16; *see also* 7 N.Y.C.R.R. § 1904.2(f) (hearing officers for Tier II hearings "may" refer violation to Temporary Release Committee). Rather, the record demonstrates that the Temporary Release Committee hearing occurred based on Hiney's referral of the drug use violation he sustained. 56.1 ¶ 21; Ex. I (identifying "Lt. Hiney" as source of referral); Ex. J at STATE DEF 000030 (disposition record indicating Hiney, as hearing officer, "[r]ecommended TRC review hearing").

Any suggestion by Plaintiff that his removal from work release was a foregone conclusion following the unauthorized possession charge (ECF Doc. No. 97 at 2-3) is flatly contradicted by the evidentiary record. Indeed, not only was Plaintiff *not* removed from the Temporary Release Program previously after he was found guilty of the same unauthorized possession charge for a

15

larger quantity of over-the-counter medication, *see* Ex. L (recommending counseling), he was later approved to have greater privileges—overnight furloughs—as part of his work release, notwithstanding his unauthorized possession violation, *see* Ex. N. 56.1 ¶¶ 35-36.

## POINT II

### PLAINTIFF WAS NOT DEPRIVED OF DUE PROCESS IN ANY EVENT

**A.    Plaintiff Received All the Process He Was Due Prior to His Removal from the Temporary Release Program.**

Even assuming that Plaintiff can overcome the personal involvement and causation bars, either of which would independently foreclose Plaintiff's due process claim, Woodberry is still entitled to summary judgment because the uncontroverted record demonstrates that Plaintiff's due process rights were not violated. Individuals have a protected liberty interest in their "continued participation" in work release programs, and are entitled to certain procedural protections before that participation can be terminated. *Friedl v. City of N.Y.*, 210 F.3d 79, 84 (2d Cir. 2000). Specifically, due process requires, before an individual can be removed from work release participation, that the individual be provided with (1) advance notice of the charges, (2) the opportunity to call witnesses and present evidence in his defense (3) before an impartial hearing officer, and (4) notice of the evidence against him and the reasons for the ultimate disposition. *See, e.g.*, *id.* at 84-85. Similar requirements apply in the disciplinary context prior to the imposition of discipline. *See Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004); *Kalwasinski v. Morse*, 201 F.3d 103, 108-10 (2d Cir. 1999).

There is no factual dispute that these requirements were satisfied in the context of Plaintiff's Temporary Release Committee hearing. Plaintiff was notified about the Temporary Release hearing, and was present and testified on his own behalf. 56.1 ¶ 24; *see* Pl.'s Dep. 102:11-

16

104:22; Ex. I. The written record of the hearing and the disposition, which Plaintiff signed, explains that the Committee's recommendation and the Superintendent's decision that Plaintiff was "unsuitable for continued participation in the [Temporary Release Program]" was based on a "disciplinary reason." 56.1 ¶¶ 25-26; Ex. I. Plaintiff received the written decision denying his appeal from Superintendent Barometre's revocation decision, which explained that revocation was "warranted" based on his drug use violation. 56.1 ¶ 27; *see* Ex. K at STATE DEF 0000178, 000177. These procedures—and the resulting revocation determination—comported with due process. And the separate drug use violation alone is sufficient to satisfy the "some evidence" standard supporting the removal. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (due process satisfied in prison disciplinary context so long as "some evidence" supports the challenged determination); *Friedl*, 210 F.3d at 85 (same, in work release context).

The record is likewise uncontroverted that the required procedures were satisfied in the context of the disciplinary hearing conducted by Woodberry on April 8, 2019. Again, it is not disputed that Plaintiff was given prior notice of the offenses he was charged with ahead of the hearing, attended in person, was permitted to present witnesses and evidence in his own defense, and was provided with a written record of the determination and the evidence considered by Woodberry in making that determination. 56.1 ¶¶ 11, 13, 18; Ex. G at STATE DEF 000002-000007; Ex. H (Audio Recording of April 8, 2019 Disciplinary Hearing); Pl.'s Dep. 96:6-99:3. Similarly, the statements contained in the misbehavior report that Plaintiff was not issued the Benadryl by DOCCS medical staff, *see* Ex. G at STATE DEF 000006, and Plaintiff's testimony admitting he possessed the Benadryl within Lincoln were sufficient to support Woodberry's violation finding, *see* Ex. H at 11:40-11:50 (Audio Recording of April 8, 2019 Disciplinary Hearing). *See Friedl*, 210 F.3d at 85.

17

Irrespective of whether Plaintiff had notice of the basis for the April 8, 2019 discipline, the hearing record plainly demonstrates that Plaintiff did not claim before Woodberry that he was unaware of the rule or believed that his possession of the Benadryl was otherwise permitted or excused by other rules. 56.1 ¶ 16; Ex. H (Audio Recording of April 8, 2019 Disciplinary Hearing); Woodberry Decl. ¶ 12. Having declined to offer *any* factual defense or argument to Woodberry at the hearing, he cannot now claim that Woodberry violated his due process rights by failing to consider a defense he never presented.

Due process requires merely that individuals are provided an *opportunity* to be heard. Plaintiff's failure to take advantage of this opportunity to raise his defense of a lack of notice of the rule he was found to have violated cannot constitute a due process violation. *See Singh v. Holder*, 473 F. App'x 78, 80-81 (2d Cir. 2012) (agency did not violate due process by relying on evidence that petitioner failed to challenge during administrative hearing despite having opportunity to do so); *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 468 n.9 (2d Cir. 2006) ("Where a state law remedy gives a party a meaningful opportunity to challenge the state's action, he is not deprived of due process simply because he failed to avail himself of the opportunity.") (internal citations and quotation marks omitted); *Brody v. Vill. of Port Chester*, 434 F.3d 121, 131 (2d Cir. 2005) (due process is satisfied so long as an "opportunity for a hearing" is provided, "regardless of . . . whether the owner takes advantage of the opportunity for a hearing"). If anything, by failing to raise his purported lack of notice at the hearing, Plaintiff has waived any such claim of a due process violation. *See, e.g.*, *Bedoya v. Coughlin*, 91 F.3d 349, 352 (2d Cir. 1996) (due process not violated in failing to call witness where incarcerated individual waived right to call witness or to lodge objection at close of hearing); *Cox v. Malone*, 199 F. Supp. 2d 135, 144 (S.D.N.Y. 2002).

**B.      Plaintiff Cannot Defeat Summary Judgment by Manufacturing a
Factual Dispute as to His Purported Lack of Notice.**

Even if there is a triable issue as to Plaintiff's lack of notice, any such issue of fact would

not be material because Woodberry would still be entitled to summary judgment for the reasons

explained in Point I, *supra*. *See, e.g.*, *Liberty Lobby, Inc.*, 477 U.S. at 248 (factual disputes on

irrelevant issues do not preclude summary judgment); *Knight v. United States Fire Ins. Co.*, 804

F.2d 9, 11-12 (2d Cir. 1986) (same).

Plaintiff's reliance on the provision in Lincoln Correctional Facility's orientation manual

stating that individuals "can take over the counter medications" is misplaced because that provision

is insufficient as a matter of law to create a genuine factual issue. *See* Ex. B at WILLS 000557,

¶ 10.[4] As an initial matter, Plaintiff was not charged with *taking* medication, but for *possessing*

medication within a DOCCS facility without the authorization of DOCCS medical staff. That rule

is plainly set forth in the Standards of Inmate Behavior handbook which Plaintiff acknowledges

he received. 56.1 ¶¶ 3-4; *see* Ex. A at STATE DEF 000965, Rule 113.14; Pl.'s Dep. 34:5-37:12

(admitting receipt of handbook containing Rule 113.14).[5] And regardless of whether individuals

may *take* over-the-counter medications while in the community, Plaintiff has pointed to no

evidence that undermines the prohibition in Rule 113.14—the violation for which he was

---

[4] Read in context with the surrounding guidelines, which pertain to individuals when they
are outside the facility, the most reasonable reading of the provision Plaintiff relies on is that it
applies when the individual is out in the community on furlough. *See* Ex. B at WILLS 000556-
000557, ¶ 3 ("If a health need develops outside the facility . . ."), ¶ 5 ("If you are at home and it
becomes necessary to go to the emergency room . . . "), ¶ 8 ("In the event a Community Doctor
prescribes medication . . ."); Harper Decl. ¶ 7.

[5] Lincoln's Orientation Manual, which Plaintiff likewise acknowledged receiving, *see* Ex.
O (Draft Receipt, Lincoln Correctional Facility, dated Sep. 6, 2018), expressly states that all
DOCCS rules as set forth in the Standards of Inmate Behavior handbook continue to apply, *see*
Ex. B at WILLS 000538, Rules.

19

charged—against the *possession* of medications within a DOCCS facility without DOCCS medical staff's authorization.

In any event, Plaintiff's insistence that he lacked notice of the unauthorized possession rule is wholly incredible in light of the undisputed fact that he was found to have violated the identical rule prohibiting the possession of over-the-counter medication without authorization less than a year prior to his April 8, 2019 disciplinary hearing. *See* 56.1 ¶¶ 32-33; Pl.'s Dep. 107:9-120:2; Ex. M at STATE DEF 000045-000051. During this earlier hearing, Plaintiff was expressly advised by the hearing officer that "[a]ny medication you have in this facility . . . has to . . . come from this facility." Ex. F at 3:42-3:49, 4:39-4:45 (Audio Recording of June 14, 2018 Disciplinary Hearing) ("Hearing Officer: Did you have authorization to have [the medication] in this facility? Wills: How would I get authorization to have something . . .? Hearing Officer: You got to go through medical."). Moreover, Plaintiff's own prior recorded statements made at his April 8, 2019 disciplinary hearing acknowledging his understanding of the rule flats contradicts his claim of lack of notice. *See* Ex. H at 12:28-12:38 ("If a medication is not prescribed, then its unauthorized medication . . . I understand that.") (Audio Recording of April 8, 2019 Disciplinary Hearing).

In the face of the uncontroverted record of Plaintiff's own disciplinary history, his bald assertions of lack of notice are insufficient to defeat summary judgment. *See, e.g.*, *Jeffreys v. City of N.Y.*, 416 F.3d 549, 555 (2d Cir. 2005) (granting summary judgment where "no reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations"); *Myers v. County of Nassau*, 825 F. Supp. 2d 359, 370 (E.D.N.Y. 2011) (plaintiff's "bare allegations" insufficient).

**CONCLUSION**

For the reasons set forth above, Defendant Woodberry is entitled to entry of judgment in

her favor.

Dated:     New York, New York
           February 5, 2024

                                          Respectfully submitted,

                                          LETITIA JAMES
                                            *Attorney General*
                                            *State of New York*
                                          Attorney for Defendant Woodberry

                                   By:    /s/ Linda Fang
                                          Linda Fang
                                          Special Litigation Counsel
                                          28 Liberty Street
                                          New York, New York 10005
                                          (212) 416-8580

Jennifer L. Goltche
  *Assistant Attorney General*
    *of Counsel*

21