```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------X
 RUBEN WILLS,                                :
                                             :
                        Plaintiff,           :
                                             : 20 Civ 4432 (BMC)
          -against-                          :
                                             : DECLARATION OF SHEILA
 MICROGENICS CORPORATION,                    : WOODBERRY IN SUPPORT OF
 THERMO FISHER SCIENTIFIC, INC., and         : HER MOTION FOR SUMMARY
 SHEILA WOODBERRY,                           : JUDGEMENT
                                             :
                                             :
                        Defendants.          :
---------------------------------------------X
```

Sheila Woodberry, declares under the penalties of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am an employee of the New York State Department of Corrections and Community Supervision ("DOCCS"). I have first-hand knowledge of the facts set forth herein and I make this declaration in support of my motion for summary judgment.

2. I have been employed by DOCCS since 2000. I am currently the Deputy Superintendent of Security at Queensboro Correctional Facility located in Queens, New York. My responsibilities in this position include oversight of all security within the facility.

3. From January 2018 to September 2019, I was assigned to Lincoln Correctional Facility, located in Manhattan, New York, as a Correctional Lieutenant. Lincoln Correctional Facility closed in 2019 and I was transferred to Queensboro Correctional Facility. While I worked at Lincoln, my responsibilities as a Lieutenant included making housing rounds and officer post rounds. While at Lincoln, I also conducted disciplinary hearings for incarcerated individuals accused of violations of DOCCS rules.

4. All individuals under the custody of DOCCS are expected to comply with DOCCS rules as

set forth in the Standards of Inmate Behavior handbook. Under DOCCS policy, all individuals are provided with a copy of the Standards of Inmate Behavior handbook when they first enter DOCCS custody.

5. On April 8, 2019, I conducted a Tier II disciplinary hearing for Plaintiff Ruben Wills, based on a misbehavior report that charged him with violating DOCCS rule 113.14 for possessing unauthorized medication and DOCCS rule 114.10 for smuggling prohibited items into a DOCCS facility. These rules are set forth in the aforementioned Standards of Inmate Behavior handbook.

6. According to the misbehavior report, Benadryl pills were found in Plaintiff's locker at Lincoln mixed in a prescription medication bottle, and a DOCCS nurse reported that the Benadryl pills had not been prescribed or otherwise issued to Plaintiff by DOCCS medical staff. A true and correct copy of the Inmate Misbehavior Report that was the basis for the disciplinary hearing I conducted on April 8, 2019 is annexed as Exhibit G to the Exhibit Volume in Support of Defendant Sheila Woodberry's Motion for Summary Judgment ("Exhibit Volume").

7. Under DOCCS rules 113.14, individuals are not allowed to possess medication of any kind within a DOCCS facility unless that medication has been issued or authorized by DOCCS medical staff. Although Lincoln rules permitted individuals to possess and take over-the-counter medication as needed when they are outside a DOCCS facility during an approved furlough, individuals are not permitted to transport that medication into a DOCCS facility nor to possess that medication within a DOCCS facility without authorization from DOCCS medical staff. This rule is for the safety of all of the individuals in DOCCS custody, and to ensure that individuals do not have access to medication within a DOCCS facility without the

knowledge and authorization of DOCCS medical staff.

8. I conducted the April 8, 2019 hearing in accordance with DOCCS rules and procedures. The April 8, 2019 hearing was recorded. A true and correct copy of the Audio Recording of the April 8, 2019 disciplinary hearing I conducted is annexed as Exhibit H to the Exhibit Volume.

9. Plaintiff was present for the April 8, 2019 hearing. At the beginning of the hearing, I advised Plaintiff of the charges against him and recorded his plea.

10. At several points during the hearing, I asked Plaintiff for his account of how he came to possess the Benadryl, but he did not provide me with any information in response other than admitting that he possessed the medication.

11. Initially, Plaintiff stated that he intended to call several witnesses, including the DOCCS staff who conducted the search and the DOCCS nurse who identified the pills and stated that they had not been prescribed or issued to Plaintiff. However, Plaintiff later changed his mind and expressly declined to call any witnesses. He also declined to offer any other evidence or to make any objections when he was offered the opportunity to do so at the hearing before I closed the evidentiary portion of the hearing.

12. At no point during the hearing did Plaintiff tell me that he believed he was permitted to take or possess the medication within Lincoln, or that anyone at DOCCS had told him he was permitted to take or possess the medication. Plaintiff also did not state that he was unaware of DOCCS rule 113.14 or what it prohibited. I therefore did not have the opportunity to consider those defenses as they were not raised to me during the hearing.

13. Based upon the contents of the misbehavior report which stated that Plaintiff was not issued the Benadryl by DOCCS medical staff and Plaintiff's testimony acknowledging that he

possessed the Benadryl within Lincoln, I found Plaintiff to be in violation of DOCCS rule 113.14. I imposed a penalty of 15 days loss of recreation for this violation. I found him not guilty of violating DOCCS rule 114.10, however, due to insufficient evidence that Plaintiff had smuggled the Benadryl from outside the facility into Lincoln. A true and correct copy of the written disposition I issued on April 8, 2019 concerning Plaintiff's discipline is annexed as Exhibit G of the Exhibit Volume.

14. I advised Plaintiff of my determination and stated in the hearing record the evidence I relied on in making this determination—namely, the contents of the misbehavior report and Plaintiff's testimony.

15. Before the April 8, 2019 disciplinary hearing of Plaintiff, I did not prejudge the evidence or the case against Plaintiff. To the contrary, I asked Plaintiff several times to tell me his side of the story and offered him the opportunity to offer mitigating evidence.

16. I did not refer my disciplinary determination from Plaintiff's April 8, 2019 disciplinary hearing to the Temporary Release Committee. Because the hearing was designated as a Tier II hearing, I was not required to refer the discipline to the Temporary Release Committee for consideration under DOCCS procedures.

17. I was not aware that Plaintiff's April 8, 2019 discipline that I issued was considered by the Temporary Release Committee. I am not familiar with procedures of the Temporary Release Program as I have not had any responsibilities connected to the Temporary Release Program while employed by DOCCS.

18. I did not attend any hearings concerning Plaintiff's participation in the Temporary Release Program. I was not aware that Plaintiff was removed from the Temporary Release Program in April 2019.

19. I did not discuss Plaintiff's April 8, 2019 discipline for unauthorized possession of medication with anyone on the Temporary Release Committee, nor did I discuss his participation in the Temporary Release Program following the discipline.

20. I did not participate in or discuss any recommendation or decision made by anyone regarding Plaintiff's removal from the Temporary Release Program in April of 2019.

21. In reviewing the materials in connection with Plaintiff's April 8, 2019 disciplinary hearing, I noticed that the audio file of the hearing does not capture the entirety of what I said when I read my disposition into the hearing record at the end of the audio recording. Specifically, the audio sounds like I said that the evidence I relied on is "3 pills of Benadryl, which is over-the-counter and is allowed" but I don't believe this is what I said or intended to say. I believe that I would have said that the Benadryl is "not allowed." The statement that Benadryl "is allowed" does not make sense in terms of my ultimate disposition, which was based on the uncontradicted statement in the misbehavior report that Plaintiff had not been authorized to possess the medication within Lincoln by DOCCS medical staff. There was no evidence in the hearing record that indicated that the medication that was found in Plaintiff's possession was authorized by DOCCS medical staff.

Dated: New York, New York
      February  1st, 2024

                                                  SHEILA WOODBERRY