**Bowman and Brooke LLP**
Attorneys at Law

317 George Street, Suite 320
New Brunswick, NJ 08901
Phone: 201.577.5175
Fax: 804.649.1762

Christopher R. Carton
Direct: 1.201.577.5175
Email: chris.carton@bowmanandbrooke.com

August 7, 2024

**VIA ECF**

Hon. Brian M. Cogan, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    **Ruben Wills v. Microgenics Corporation and Thermo Fisher Scientific Inc.**
              **Civil Action No. 1:20-cv-04432-BMC-VMS**

Dear Judge Cogan:

      This office represents Defendants Microgenics Corporation and Thermo Fisher Scientific Inc., in the above-captioned matter. Defendant Microgenics Corporation ("Microgenics") respectfully requests a pre-motion conference to seek permission to file a Motion for Summary Judgment pursuant to Rule 56.

      Plaintiff's claims arise from a positive urinalysis drug screen performed while he was in the custody of the Department of Corrections and Community Supervision ("DOCCS"). DOCCS personnel conducted the screen using a urinalysis analyzer and assay supplied by Microgenics, and Plaintiff alleges the screen returned a "false positive" for buprenorphine, prompting DOCCS to discipline him. Am. Compl. ¶¶ 84–85, 87–90. At that time, Microgenics was under contract to supply DOCCS with urinalysis analyzers, immunoassays, and certain product-support services. Contract No. CC161458. The contract identified the drugs-of-abuse screening assays DOCCS would purchase from Microgenics. *Id.* The contract also required that Microgenics provide installation and training services, *id.* at 25–26, and offer disciplinary hearing testimony about its drug-screen products on an "as needed" basis, *id.* at 27.

      In the Complaint, Plaintiff claims that Microgenics' drug-screen analyzers and immunoassays produce false positive results generally and that Microgenics was therefore negligent in supplying its products to DOCCS and in training DOCCS personnel to use the products. *See id.* ¶¶ 49–62. For the reasons that follow, Plaintiff has failed to carry his burden as a matter of law.

      **1. Microgenics neither Conducted nor Administered Plaintiff's Drug Test and Therefore Owed No Duty to Plaintiff.**

      New York law dictates that a contractual undertaking "is not a source of tort liability to third parties." *Landon v. Kroll Lab. Specialists, Inc.*, 999 N.E.2d 1121, 1124 (N.Y. 2013).

Honorable Brian Cogan
August 7, 2024
Page 2

Plaintiff's allegations attempt to fit within the "force or instrument of harm" exception to this no-duty rule, as set forth in *Landon*. *Landon's* progeny, *Pasternack v. Lab. Corp. of Am. Holdings*, 59 N.E.3d 485, 490 (N.Y. 2016), instructs that a tort duty may be owed to a third-party "limited to 'th[o]se circumstances'" in which a "drug laboratory[ ]" or "program administrator" fails to "adhere to professionally accepted scientific testing standards in the testing of the biological sample." That ruling squares with *Landon*'s logic that "[t]he laboratory is also in the best position to prevent false positive results." 999 N.E.2d at 1124.

Nearly five years of discovery demonstrate that Microgenics was neither a drug testing laboratory nor a program administrator, and it did not conduct Plaintiff's urinalysis test; DOCCS conducted the test and administered the program per DOCCS' Directive 4937, codified in 7 NYCRR 1020. Microgenics was merely a vendor who supplied the testing apparatus and assays to DOCCS, which is not a sufficient basis to impose liability under *Landon* and *Pasternack*.

### 2. Even if Microgenics Owed Plainitff a Duty, Plaintiff has not Produced Competent Evidence Disputing Plaintiff's Positive Test Result, and Plaintiff Cannot Prove that the Microgenics' Buprenorphine II Test was Unreliable.

Even assuming Microgenics owed a duty to Plaintiff, which it did not, Plaintiff produced no competent evidence supporting his claim that his drug test result was false. Plaintiff's entire case is based on his self-serving testimony that he did not use drugs. "[A] nonmoving party's self-serving statement, without direct or circumstantial evidence . . ., is insufficient to defeat a motion for summary judgment." *Walker v. Carter*, 210 F.Supp.3d 487. 503 (S.D.N.Y. 2016). Plaintiff has presented no proof beyond his own testimony that his test result was false. DOCCS discarded Plaintiff's urine after the drug screen. At the very least, expert testimony is required to prove that the Microgenics' buprenorphine assay caused Plaintiff's alleged false positive result. *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig*, 387 F. Supp. 3d 323 (S.D.N.Y. 2019). Yet, Plaintiff's own expert does not opine that Plaintiff's test result was false and admits it may very well have been accurate. Without an ability to establish that Plaintiff's test result was in fact false, and that Microgenics' assay caused that false result, both the elements of breach and causation fail.

Additionally, Plaintiff has produced nothing to dispute abundant scientific evidence demonstrating that the Microgenics' Buprenorphine II assay has an accuracy rate that exceeds 98%. In *Pernazo v. Coughlin*, 850 F.2d 125, 126 (2d Cir. 1988), the Second Circuit explicitly held that an immunoassay with 98% or greater accuracy satisfies due process in the context of inmate discipline, even if that assay returns some false results. Plaintiff's expert opines in conclusory fashion that the Microgenics Buprenorphine II assay is "unreliable" but engaged in no qualitative analysis of the assay, the testing methodology, or other scientific investigation that leads to a conclusion that the assay is less than 98% accurate, let alone "unreliable." At the end of the day, no evidence supports Plaintiff's promise to prove that Microgenics "designed, manufactured, and sold a system that returned a high rate of false positives in violation of the relevant professional standards." (Doc. 57, Memorandum Decision and Order, 05/07/21, p. 3).

### 3. Plaintiff's Alleged Damages Were Not Caused by Microgenics.

As noted, Microgenics did not administer the drug testing program at DOCCS; Microgenics manufactured and supplied the assay that DOCCS used to test Plaintiff's urine. It was DOCCS that collected and stored Plaintiff's sample, DOCCS that tested his urine, DOCCS medical personnel that were supposed to conduct a medical inquiry for cross-reactivity per Directive 4937, DOCCS that issued a misbehavior report, DOCCS that held a disciplinary hearing wherein Plaintiff was able to present evidence and call witnesses in his defense, and DOCCS that determined that Plaintiff violated its drug use policy. DOCCS *suspended* all sanctions it imposed on Plaintiff. At a *separate* work release hearing, DOCCS removed Plaintiff from the work release program (based on various considerations). All of those intervening steps and judgments exercised by various DOCCS officials serve to sever whatever thin causal chain existed between Microgenics and Plaintiff. *Dufort v. City of New York*, 874 F.3d 338, 352 (2d Cir. 2017).

### 4. Plaintiff's Alleged Injuries Are Not Legally Cognizable.

Plaintiff was not punished as a result of his positive drug test; his sentence was suspended and never imposed. However, Plaintiff still seeks to recover damages for emotional distress and removal from Temporary Work Release that DOCCS imposed after a hearing subsequent to and separate from his drug use hearing. Those damages are not cognizable against Microgenics. First, to recover for emotional damages in the absence of a direct physical injury Plaintiff must establish that his claim has an "assurance of genuineness," such as the false claim of a family member's death or mishandling of a corpse. *Taggart v. Costabile*, 14 N.Y.S. 388, 395-96 (2015). No similar assurance of genuineness is present in this case. Second, Plaintiff was removed from Temporary Work Release at a subsequent DOCCS hearing, specific to his work release status. Thus, his removal cannot plausibly be attributable to Microgenics.

### 5. Plaintiff is Seeking to Recover for Wrongful Confinement and Malicious Prosecution, Disguised as Negligence.

Plaintiff's negligence claim against Microgenics is in reality two separate claims for wrongful confinement and malicious prosecution. New York and the Second Circuit are clear: claims for wrongful confinement and malicious prosecution are not to be subsumed under a claim of negligence, and the claim of negligence is dismissed in those instances. *Nazario v State of New York*, 24 Misc 3d 443, 455 (Ct Cl 2009), affd 75 A.D.3d 715 (3d Dept 2010). "Loss of liberty" is clearly a claim for wrongful confinement, and the allegation that Plaintiff was wrongfully punished is clearly a claim of malicious prosecution. Under both theories, Plaintiff cannot survive summary judgment, as he fails at the outset to satisfy the respective elements of those claims. *Posr v. Court Officer Shield #207*, 180 F.3d 409, 417 (2d Cir. 1999) (malicious prosecution elements); *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (wrongful confinement elements). Further, there is no evidence that Plaintiff lost his liberty or that his incarceration was extended based on the positive drug test.

Honorable Brian Cogan
August 7, 2024
Page 4

      Because Plaintiff cannot establish duty, breach, or causation, nor has he alleged cognizable damages, his claims as to Microgenics must be dismissed. At the close of discovery there are no triable issues of material fact and dismissal with prejudice against Microgenics is warranted.

      Respectfully Submitted,

**BOWMAN AND BROOKE LLP**

*/s/ Christopher R. Carton*

Christopher R. Carton
Managing Partner

CRC/la

29891109v1