**Bowman and Brooke** LLP

*Attorneys at Law*

317 George Street, Suite 320
New Brunswick, NJ 08901
Phone: 201.577.5175
Fax: 804.649.1762

Christopher R. Carton
Direct: 1.201.577.5175
Email: chris.carton@bowmanandbrooke.com

August 7, 2024

<u>VIA ECF</u>

Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

  **Re:** *Ruben Wills v. Microgenics Corporation and Thermo Fisher Scientific, Inc.*
    **Civil Action No. 1:20-cv-04432-BMC-VMS**

Dear Judge Cogan:

  This office represents Defendants Microgenics Corporation ("Microgenics") and Thermo Fisher Scientific Inc. in the above-captioned matter. Defendant Thermo Fisher Scientific Inc. ("TFSI") joins and adopts the arguments raised in Defendant Microgenics' pre-motion letter.  TFSI writes separately to respectfully request a pre-motion conference to seek permission to file a Motion for Summary Judgment pursuant to Rule 56 because there are additional grounds to enter judgment in its favor.

  Plaintiff's claims arise from a urinalysis drug screen performed while he was in the custody of the Department of Corrections and Community Supervision ("DOCCS"). DOCCS personnel conducted the screen using a urinalysis analyzer supplied by Microgenics (not TFSI), and Plaintiff alleges the screen returned a "false positive" for buprenorphine, prompting DOCCS to discipline him. Am. Compl. ¶¶ 84–85, 87–90. At that time, Microgenics (not TFSI) was under contract to supply DOCCS with urinalysis analyzers, immunoassays, and certain product-support services. Contract No. CC161458. The contract identified the drugs-of-abuse screening assays DOCCS would purchase from Microgenics (not TFSI). *Id.* The contract also required that Microgenics (not TFSI) provide installation and training services, *id.* at 25–26, and offer testimony about its drug-screen products on an "as needed" basis, *id.* at 27.

  In the Complaint, Plaintiff essentially claims that Microgenics' drug-screen analyzers and immunoassays produce false positive results and that Microgenics was therefore negligent in supplying its products to DOCCS and in training DOCCS personnel to use the products. *See id.* ¶¶ 49–62. But TFSI had no role whatsoever in Plaintiff's alleged injuries or any of the contractual duties between DOCCS and Microgenics.

**TFSI Cannot Be Held Liable Solely By Virtue of Being a Corporate Parent**

  It is uncontested that TFSI is an indirect parent corporation to Microgenics. This, however, is the sole extent TFSI has any "involvement" in this suit. It therefore cannot be held liable.

Honorable Brian Cogan
August 7, 2024
Page 2

"It is a basic principle of corporate law that a parent will not be held liable for the acts of its subsidiaries." *National Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 975 F. Supp. 2d 393, 401 (S.D.N.Y. 2013) (citing *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)). "Liability is never imposed solely upon the fact that a parent owns a controlling interest in the shares of a subsidiary." *Manchester Equip. Co.*, *Inc., v. American Way*, 60 F. Supp. 2d 3, 6 (E.D.N.Y. 1999) (citing *Morris v. New York State Dep't of Taxation and Finance*, 82 N.Y. 135, 141 (1993)). "In fact, New York courts are 'reluctant' to disregard corporate form and will do so only if the form has been used to achieve fraud or the parent exercises such extreme dominion and control over the subsidiary as to render the corporate form a sham." *Ibid.* (citing *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979)). Even when *complete domination* exists, the party seeking to hold a parent liable for the sole acts of the subsidiary must *also* show that "such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Mirage Ent., Inc. v. FED Entreteniniementos S.A.*, 326 F. Supp. 3d 26, 34 (S.D.N.Y. 2018). "[I]t is well-established that an ordinary breach of contract, without evidence of fraud or corporate misconduct, is not sufficient to pierce the corporate veil." *Id.* at 35 (citation omitted). None of these facts exist here.

In limited situations, a parent corporation "can be held liable for the breach of a contract signed by its subsidiary if (1) its intent to be bound by the contract were 'inferable from the parent's participation in the negotiation of the contract,' (2) 'if the subsidiary is a dummy for the parent' or (3) 'if the subsidiary is controlled by the parent for the parent's own purposes.'" *Kitchen Winners NY Inc., v. Rock Fintek LLC*, 668 F.Supp.3d 263, 284 (S.D.N.Y. 2023) (quoting *MBIA Ins. Corp. v. Royal Bank of Can.*, 706 F. Supp.2d 380, 396 (S.D.N.Y. 2009)). Again, none of these facts exist here. Discovery has, in fact, supported the opposite proposition. TFSI's corporate representative testified that TFSI is "the parent to . . . multiple thousands of subsidiaries." (Deposition of Victor J. Wilczynski, Jr. at 9:22-25).[1] That representative also testified that TFSI does not sell anything. *Id.* at 36:15-19. TFSI is instead "a parent structure for all of its subsidiaries," *ibid.,* and Microgenics is "an indirect wholly owned subsidiary of [TFSI]." *Id.* at 38:19-20.

It is undisputed that Microgenics is "the company that entered into [the] contract" with DOCCS. *Id.* at 45:10-11; 49:11-19. Pursuant to that contract, DOCCS was provided with Indiko Plus benchtop analyzers, and agreed to purchase immunoassays from Microgenics to use within the analyzers. *Id.* at 50-53. TFSI, again, did not manufacture, design, or sell any of those products. TFSI does not "have any specific policies or procedures as it related to bidding and government contracts" for itself or its subsidiaries, as TFSI "itself does not bid on government contracts." *Id.* at 65:3-8. TFSI "is not involved with the day-to-day business proceedings and operations of its subsidiaries." *Id.* at 65:18-21. As a result of that limited involvement, TFSI "would not know any specific details of the contract agreement between Microgenics and New York Department of Corrections." *Id.* at 69:5-10.

Plaintiffs may claim that TFSI can be sued because Microgenics employees used "Thermo Fisher" (not TFSI) email addresses, but that does not affect the analysis. The common moniker "Thermo Fisher" (again, not TFSI) is simply for branding purposes. *Id.* at 77-79. In fact, there are "no Thermo Fisher employees that are assigned to Microgenics. They're Microgenics employees."

---

[1] This deposition transcript is marked confidential but will be included in TFSI's summary judgment briefing under seal.

Honorable Brian Cogan
August 7, 2024
Page 3

*Id.* at 70:6-11. Microgenics "is completely autonomous on its decisions to hire, fire, retain staff. Any of their business, day-to-day proceedings, they run as their own company." *Id.* at 70:20-71:5. At the end of the day, "there's no employee of Thermo Fisher Scientific, Inc. that is assigned to or works for Microgenics Corporation." *Id.* at 71:6-21. While Microgenics operates as "Microgenics Corporation d/b/a Thermo Fisher Scientific" (again, not TFSI), that d/b/a does not indicate, change, or otherwise imply control. *Id.* at 90:11-22. And TFSI "wouldn't know what the individual employees were using in terms of their own identification. There would likely be an email address with Thermo Fisher, but there would be no specific knowledge that [TFSI] would have on how Microgenics is conducting its day-today business with its sales team." *Id.* at 69:16-22. Simply stated, it is beyond dispute that TFSI "does not control Microgenics from a business operations standpoint." *Id.* at 73:9-12.

      A common moniker, without more, does not render a parent company liable for a subsidiary. As stated by the Third Circuit, "[c]ollaborating across legal entities, informally seeing subsidiaries as part of a parent company's global network, and using a common moniker on products is exactly what one expects from a parent-subsidiary relationship – a relationship that does not generally generate liability for the parent." *Arcelik A.S. v. EI DuPont de Nemours & Co.*, 2023 WL 3862506 (3d Cir. Jun. 7, 2023) (citing *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)). The mere existence of a parent corporation does not render it an appropriate party for its subsidiary's mundane contractual disputes. And the testimony of TFSI's corporate representative confirms that TFSI did not engage in negotiations with DOCCS, did not utilize Microgenics as a "dummy," and did not control Microgenics for the parent's own purposes—let alone that the alleged control or domination was utilized to commit fraud.

      Because there is no evidence establishing *any* liability attributable to TFSI, TFSI is entitled to summary judgment on all claims asserted against it.

                Respectfully Submitted,

                **BOWMAN AND BROOKE LLP**

                */s/ Christopher R. Carton*

                Christopher R. Carton
                Managing Partner

CRC/la